ATTORNEY GENERAL, *ex rel.* DINGEMAN, *v.* LACY.

1. CONSTITUTIONAL LAW—LOCAL LEGISLATION — COURTS—VALIDITY OF STATUTE.
    The provisions of article 5, section 30, of the Constitution, which provides that no local act shall be passed by the legislature if a general act can be made applicable, and that local acts shall be approved by the electors of the district to be affected before they may become law, were intended to abolish the abuses prevalent in the legislature in the enactment of special legislation and to secure to the people of the State the right to control their local affairs within the community affected.

2. SAME—COURTS—GENERAL LAWS.
    The section of article 7 vesting the judicial power in the Supreme Court, circuit courts, etc., requires the establishment of inferior courts under general laws enacted by the legislature; local legislation being prohibited by necessary implication.

3. SAME—CLASSIFICATION—POPULATION.
    Since the Constitution was intended to prohibit local or special acts except under the conditions specified therein, its provisions cannot be evaded by classifying counties or divisions according to population for the purpose of establishing inferior courts.

4. SAME—DOMESTIC RELATIONS, COURT OF—LOCAL ACTS.
    Act No. 186, Pub. Acts 1913, creating a court of domestic relations in counties having upwards of 250,000 popula-

tion, is local in its purpose and effect and violates the above-mentioned sections of the Constitution.

5. Same—Classes.

In order to warrant the legislature in so classifying municipalities or other subdivisions of the State, it is necessary to find justification therefor in some substantial difference in conditions arising out of the greater number of inhabitants, and in no case may such a classification be sustained where it is a manifest subterfuge.

6. Same—Juvenile Courts—Probate Courts.

In depriving the probate court of jurisdiction in cases of juvenile delinquency, the statute (section 10) further violates the Constitution, article 7, sec. 13.

7. Same—Courts—Jurisdiction of Circuit Courts.

And it is also invalid because the act attempts to deprive the circuit court of Wayne county of a portion of its appellate jurisdiction conferred by section 13, art. 7, Constitution.

8. Same—Courts—De Facto Judge—Domestic Relations.

Acts of the judge of the court of domestic relations created in Wayne county pursuant to the invalid legislation are not open to jurisdictional objections, being the acts of a *de facto* officer.

Information in the nature of *quo warranto* by Grant Fellows, attorney general, on the relation of Harry J. Dingeman, against Arthur J. Lacy, judge of the court of domestic relations for the county of Wayne, to try respondent's title to said office. Respondent demurred to the information. Demurrer overruled and judgment of ouster entered. Submitted January 30, 1914. (Calendar No. 25,902.) Decided April 17, 1914.

*Grant Fellows*, Attorney General (*Fred A. Baker, Robert T. Speed*, and *Elbridge F. Bacon*, of counsel), for relator.

*Otto Kirchner* and *Jasper C. Gates* (*Alfred Lucking*, of counsel), for respondent.

*William L. Carpenter*, for board of supervisors of Wayne county.

This is a proceeding in *quo warranto* to test the title of respondent to the office of judge of the court of domestic relations in the city of Detroit. Respondent's right to the office is questioned solely upon the ground that the statute creating the court in which he sits as judge is unconstitutional. The title and the first eleven sections of the act (Act No. 186, Pub. Acts 1913) follow:

"An act to provide and establish a court of domestic relations in each county of this State, which has a population of upwards of two hundred fifty thousand, to define its jurisdiction and for the purpose of this act to provide for additional circuit judges in such counties.

"*The people of the State of Michigan enact:*

"SECTION 1. There shall be in each county of this State, which has a population of upwards of two hundred fifty thousand, a court of domestic relations, which shall be a court of record, having one judge whose term of office shall commence on the first day of September, nineteen hundred thirteen. The office of the judge of the court of domestic relations hereby created, shall be deemed vacant from and after the taking effect of this act, and shall be filled by appointment by the governor of the said State, and such judge shall hold office until the next general election.

"SEC. 2. At the first general election held in said counties, respectively, after this act shall take effect, the qualified electors of each such county shall, in the manner prescribed by law for the election of circuit judges, elect a judge of the court of domestic relations of such county, and his term of office shall continue until the first day of January, nineteen hundred eighteen. Thereafter all judges shall be elected every six years at the April election next preceding the expiration of the term of the then incumbent. In case of a vacancy in the office of judge of the court of domestic relations, the governor shall fill said vacancy, and the incumbent so appointed shall hold office until the next general election. The provisions of law relative to nomination and election of circuit judges shall in all cases govern the nomination and election of judges of the court of domestic relations.

"SEC. 3. Said judge, by virtue of his office, shall be a circuit judge of the circuit court of the same county, and as such it shall be his duty to hear and determine all suits for divorce, all suits for annulment of marriage, and all other such suits, actions and proceedings shall be for that purpose assigned to him by the presiding judge of said circuit court. The court of domestic relations shall have original jurisdiction to hear, try and determine all criminal cases wherein the crime, misdemeanor, offense or felony charged shall have been committed within the county in which said court of domestic relations is located, which crime, misdemeanor, offense or felony shall be because of violation of the laws: *First*, compelling the support of wife and minor children by the husband and father; *second*, forbidding the desertion and abandonment of wife or minor children by the husband and father; *third*, prohibiting contributing to the delinquency of children; *fourth*, compelling the compulsory education of children; and *fifth*, forbidding cruelty to children. Said court shall have original jurisdiction to hear, try and determine all actions brought to compel the support of illegitimate and bastard children under the laws of the State of Michigan.

"In furtherance of the foregoing purposes, said courts of domestic relations shall also have original jurisdiction of all prosecution and proceedings in behalf of the people of the State for all crimes, misdemeanors and offenses arising under the laws of this State, and committed within the limits of their respective counties, except in cases which, under the constitution of this State, may be exclusively cognizable by the police courts and justice of the peace of such counties, under and by virtue of the following statutes of this State, to wit:

"Act number two hundred sixty-four of the public acts of eighteen hundred eighty-nine, entitled 'An act relative to disorderly persons,' etc., being section nine hundred twenty-three of the Michigan Compiled Laws of eighteen hundred ninety-seven, so far as the same relates to the abandonment or threat to abandon wives or children, and refusal or neglect to support them;

"Act number one hundred fifty-six of the Public Acts of eighteen hundred ninety-three, entitled 'An

act to provide a penalty for cruelty to children,' being section eleven thousand five hundred seven of the Compiled Laws of eighteen hundred ninety-seven, as amended by act number two hundred thirteen of the Michigan Public Acts of eighteen hundred ninety-seven;

"Act number one hundred forty-four of the Michigan Public Acts of nineteen hundred seven, entitled 'An act to prevent a desertion and abandonment of wife or children by persons charged by law with the maintenance thereof; to make such abandonment and desertion a felony and to prescribe punishment therefor; to provide for the care of the dependent wife and children, and to repeal act number thirty-nine of the Public Acts of nineteen hundred three;'

"Act number two hundred eighty-four of the Michigan Public Acts of nineteen hundred seven, entitled 'An act to provide punishment for wife desertion in certain cases;'

"Act number three hundred fourteen of the Michigan Public Acts of nineteen hundred seven, entitled 'An act to provide for the punishment of the persons responsible for or contributing to the delinquency of children;'

"Act number two hundred of the Public Acts of nineteen hundred five, entitled 'An act to provide for the compulsory education of children, for penalty for failure to comply with the provisions of this act, and to repeal all acts or parts of acts conflicting with the provisions of the same, as amended by act number seventy-four of the Public Acts of nineteen hundred seven, and act number two hundred fifty-five of the Public Acts of nineteen hundred eleven.'

"And under and by virtue of any and all other statutes amendatory of, or supplementary to any of the statutes above specified, and any and all other statutes relating to crimes, misdemeanors and offenses above specified.

"SEC. 4. In all cases determined by any police court or justice of the peace within the limits of their respective counties, under either or any of the statutes hereinbefore specified, an appeal may be taken to the court of domestic relations of the same county, in the same manner and with the same effect as prescribed by the general laws of the State for appeals from

convictions by justices of the peace within this State to the circuit court in criminal cases; and said courts of domestic relations are hereby given exclusive jurisdiction of all appeals from convictions under said statutes.

"SEC. 5. Said court of domestic relations shall have power to issue all lawful writs and process, and to do all acts which may be necessary and proper to carry into complete effect the powers and jurisdiction given by this act. And further, in all prosecution and proceedings for the punishment of misdemeanors, under and by virtue of the statutes above mentioned, to issue all writs and process, and to do all acts which justices of the peace within their respective jurisdictions may issue and do by the laws of this State, and shall therein as far as applicable be governed by the provisions of law regulating criminal cases and proceedings before justices of the peace.

"SEC. 6. In the hearing and trial of all cases pending in the circuit courts of the same county, the trial of all felonies and the trial and hearing of all causes and proceedings in the exercise of its appellate jurisdiction, the practice and proceedings of said court of domestic relations shall be the same as those prescribed by law for circuit courts in this State, in like cases, unless otherwise limited by this act; and the rules prescribed by the Supreme Court for the guidance and practice of circuit courts shall be the rules of said court of domestic relations in its proceedings above specified in this section so far as the same may be applicable; but it shall have the same power and make rules for its practice and proceedings as is by law given to circuit courts, or the judges thereof.

"SEC. 7. Whenever a husband shall, without good and sufficient cause, desert his wife, or shall have deserted his wife, or being of sufficient ability to support her, shall refuse or neglect to properly provide for and suitably maintain her, being a resident of this State, the court of domestic relations of any county in this State in which said husband or wife shall reside, shall, on the application of the wife by petition, allot, assign, set apart and decree to her as alimony, the use of such part of her husband's real and personal estate, or such proportions of his earnings, income or revenue, as the court may determine, in its discretion,

and during the pendency of the proceeding may require the husband to pay such sums to carry on the proceeding, or for her support as it shall deem necessary, in like manner as provided by section eight thousand six hundred twenty-eight of the Compiled Laws of eighteen hundred ninety-seven, in case of suits for divorce.

"SEC. 8: In every proceeding pursuant to the preceding section the proceedings and practice therein shall be the same, as near as may be, as is now provided for by law in cases of a petition or bill for divorce and alimony, and said court of domestic relations shall have and exercise the same power and authority therein.

"SEC. 9. In all proceedings brought pursuant to the two last preceding sections, the court may order and decree concerning the care, custody and maintenance of the minor children of the parties, and may determine with which of the parties the children, or any of them, shall remain, and during the pendency of the proceeding, may assign and decree to the wife the possession of any of the real and personal estate of the husband, and the court may decree the payment of a fixed sum of money for the support of such wife, and minor children, and that the payment of the same be secured upon real estate, or otherwise, at such times and in such manner as may be proper, and may enforce the performance of such decree by the sale of the real estate of the husband, or otherwise, as may be necessary. And the court shall have power to change the allowance from time to time, according to the circumstances, and may revoke such allowance altogether on satisfactory proof of a voluntary and permanent reconciliation: *Provided, however,* that such allowance shall be only during the joint lives of such husband and wife.

"SEC. 10. In relation to any and all children of parents who shall or may be brought before said court, under and by virtue of the provisions of sections seven, eight and nine of this act, and of parents who shall be parties to any suit for divorce, or for the annulment of marriage, said court of domestic relations shall have and exercise all the jurisdiction, power and authority of juvenile courts, under and by virtue of

act number three hundred twenty-five of the Public Acts of nineteen hundred seven, during the pendency of such proceedings.

"SEC. 11. The judge may appoint one or more persons to act as probation officers and such other clerical assistance as may be necessary, to be paid from such funds as may be appropriated for the purpose from time to time by the county board of supervisors. The judge of said court may appoint other probation officers who shall receive no compensation from the public treasury for the duties performed under such appointment. A probation officer shall hold office during the pleasure of the court and shall act upon all cases in obedience to the orders of the court: *Provided,* that the court shall notify the State board of corrections and charities of the appointment of all probation officers who shall make such reports to said board as said board may from time to time demand."

Certain constitutional provisions are involved:

## "ARTICLE VII.

"SECTION 1. The judicial power shall be vested in one Supreme Court, circuit courts, probate courts, justices of the peace and such other courts of civil and criminal jurisdiction, inferior to the Supreme Court, as the legislature may establish by general law, by a two-thirds vote of the members elected to each house."

"SEC. 8. The State shall be divided into judicial circuits in each of which there shall be elected one circuit judge. The legislature may provide by law for the election of more than one circuit judge in any judicial circuit. A circuit court shall be held at least four times in each year in every county organized for judicial purposes. Each circuit judge shall hold court in the county or counties within the circuit in which he is elected, and in other circuits as may be provided by law."

"SEC. 13. In each county organized for judicial purposes, there shall be a probate court. The jurisdiction, powers and duties of such courts and of the judges thereof shall be prescribed by law, and they shall also have original jurisdiction in all cases of juvenile delinquents and dependents."

"ARTICLE VIII.

"SEC. 17. The legislature may by general law confer upon organized townships such powers of a local, legislative and administrative character, not inconsistent with the provisions of this Constitution, as it may deem proper."

"SEC. 20. The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts.

"SEC. 21. Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State."

"ARTICLE V.

"SEC. 21. No law shall embrace more than one object, which shall be expressed in its title," etc.

"SEC. 30. The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question. No local or special act shall take effect until approved by a majority of the electors voting thereon in the district to be affected."

BROOKE, J. *(after stating the fact).* Considering the history of legislation under the Constitution of 1850, it is apparent that there had grown up a pernicious practice on the part of the legislature in passing local acts. The practice was bad in two very important particulars. In the first place, much of the legislation thus enacted constituted a direct and unwarranted interference in purely local affairs and an invasion of the principles of local self-government. In the second place, such legislation affecting as it did certain limited localities in the State, the senators and

180 MICH.—22.

representatives from unaffected districts were usually complaisant, and agreed to its enactment without the exercise of that intelligence and judgment which all legislation is entitled to receive from all the members of the legislature. This course led to many abuses (principally in amendments to city charters), some of which found their way into the courts, and were there redressed so far as the Constitution then in force would permit.

With these evils in mind, the Constitution of 1909 was formulated and adopted by the people. From a reading of the provisions above quoted and others of a similar character, it is, we think, entirely clear that it was the settled purpose of the framers of the new instrument and of the people who adopted it to forever insure to the people the right to control their affairs purely local, and to secure for all general legislation grave attention and the application of the collective wisdom of the legislators.

Assuming that we are correct in this premise, it is pertinent to inquire whether the object has been achieved. Based upon a classification by population, we find that the legislature of 1909 passed two acts purely local in application. In 1911 five such acts were passed, and in 1913 there were thirteen. Some of these may be justified under the new Constitution; but, regarding them as a whole, it is evident that, if classification by population is broadly sustained, local legislation may now be as freely enacted as before the adoption of the new Constitution, thus evading and avoiding the salutary check which that instrument sought to impose.

We take it to be conceded by counsel for respondent that the court of domestic relations is a new or "other" court within the meaning of article 7, § 1, of the Constitution, and that to be valid it must be established by "general law."

We note, but disagree with the contention of one of respondent's counsel (Mr. Gates), that there is nothing in section 1, art. 7, which, either expressly or by implication, prohibits the legislature from establishing "other courts of civil and criminal jurisdiction inferior to the Supreme Court by a *local law*." The section in question authorizes the establishment of such courts by *general law*. If the contention is sound, the use of the word "general" was wholly superfluous. The language is unambiguous, and by necessary implication prevents the establishment of such courts by *local laws*.

It is, however, contended that the act in question is valid as a general law. The act is limited in its operation by its title to "each county of this State which has a population of upwards of two hundred fifty thousand." It is conceded that Wayne county is the only county having the requisite population. It is said that, if the normal increase in Kent county continues, that county will come under the operation of the act between 20 and 30 years hence. It is certain that the law can never become operative in a vast majority of the counties of the State. Personally, I am of the opinion that under the new Constitution all general legislation based upon classification of population, except such as is therein specifically authorized, is forbidden. Some of my associates, however, do not agree with me in this view. For the purposes of this case, therefore, I will assume that some general legislation based upon such classification may be valid. Under this assumption, is the act in question a valid general law?

Dillon, in his work on Municipal Corporations, vol. 1, § 151, says:

"But classification by population cannot be made arbitrarily and without reason. There must be some reason, in the nature of things, for the distinctions adopted. The size of the municipality as evidenced

by its population must have a reasonable relation to the subject-matter of the legislation, and must furnish some fairly apparent reason for legislation differing from that applicable to other municipalities having a substantial difference in population."

The cases where such classification has been sustained are collected in note 5 to the section. There are many cases where classification by population has been held invalid, among them the following: *People* v. *Election Commissioners*, 221 Ill. 9 (77 N. E. 321, 5 Am. & Eng. Ann. Cas. 562); *State* v. *City of Des Moines*, 96 Iowa, 521 (65 N. W. 818, 31 L. R. A. 186, 59 Am. St. Rep. 381); *State* v. *Downs*, 60 Kan. 788 (57 Pac. 962); *St. Louis* v. *Dorr*, 145 Mo. 466 (41 S. W. 1094, 46 S. W. 976, 42 L. R. A. 686, 68 Am. St. Rep. 575); *Wanser* v. *Hoos*, 60 N. J. Law, 482 (38 Atl. 449, 64 Am. St. Rep. 600); *Rauer* v. *Williams*, 118 Cal. 401 (50 Pac. 691).

In the *Henneberger Case*, 155 N. Y. 420 (50 N. E. 61, 42 L. R. A. 132), the court said:

"Although this act is drawn in general terms, if its provisions are such in number and character as unduly, with reference to the constitutional purpose, to restrict its operation, and, to all intents, to confine it to a particular locality, then, I think it comes as much under condemnation as though it designated the locality by name. While an act might be general, if it affected all towns of a class and that class was based on population, or some other condition, which might be recognized as possibly common to a class, or which might permit of classification, if it contain such added limitations as to restrict its operation to what must always be, in the nature of the case, a very limited number of specified localities, if not, in fact, one, then it is local within the constitutional sense."

Later, in the case of *People* v. *Dunn*, 157 N. Y. 528 (52 N. E. 572, 43 L. R. A. 247), the same court sustained the statute authorizing a special jury in certain cases in each county of the State having a population of 500,000 or more. After distinguishing the

case from the *Henneberger Case, supra,* the court said:

"There is nothing in this act to limit its general application in all cases where the population of the county has attained a certain size, and such a condition might reasonably be considered as possible generally."

A consideration of all the cases cited, as well as many others, convinces us that a classification by population can never be sustained where it is, as in the case at bar, a manifest subterfuge. The act under consideration might with equal propriety have been limited in its operation by its title to the county of Wayne. Its "general" character is not established by the use of other words which mean the same thing. The classification attempted cannot find excuse in necessity. Under the Constitution, additional circuit judges may be created as necessity requires. If changing social conditions require a broadening of their powers, that may be readily supplied through suitable legislation.

The domestic relations of the inhabitants of the counties of Wayne, Jackson, or Ogemaw are essentially the same. The same problems touching these relations are presented in every community, though with a frequency varying with the population. There is no reason, founded in logic, why the residents of Wayne county should be subjected to regulations in their domestic relations which are not applicable to residents in all other parts of the State.

The act is clearly unconstitutional, because it in terms (section 10) deprives the probate court of jurisdiction in certain cases of juvenile delinquents and dependents, which jurisdiction is expressly conferred upon the probate courts by section 13, art. 7, of the Constitution.

The act (section 4) is plainly in conflict with the

last-named section, in that it deprives the circuit court of the county of Wayne, or at least the other judges thereof, of appellate jurisdiction in certain enumerated cases. This the legislature may not do. *People, ex rel. Allen,* v. *Kent Circuit Judge,* 37 Mich. 474; *People, ex rel. Heath,* v. *Kent Circuit Judge,* 37 Mich. 372. Circuit courts are constitutional courts, and the jurisdiction conferred by the Constitution cannot be diminished by legislative enactment. *Nichols* v. *Judge of Superior Court,* 130 Mich. 187 (89 N. W. 691), and cases cited.

The court of domestic relations is created by legislative enactment. A judge of that court cannot lawfully be clothed with a jurisdiction conferred by the Constitution upon a constitutional officer. *State* v. *Hastings,* 10 Wis. 525; *Ex parte Corliss,* 16 N. D. 470 (114 N. W. 962). See, also, *People, ex rel. Allen,* v. *Kent Circuit Judge, supra; Allor* v. *Wayne County Auditors,* 43 Mich. 76 (4 N. W. 492).

Inasmuch as respondent, under the authority of a legislative enactment, assumed to exercise a portion of the jurisdiction of the circuit court, which is a constitutional court, we are of opinion that such of his judicial acts as are within the jurisdiction of the circuit court should be considered as those of a *de facto* judge, not open to question upon jurisdictional grounds.

For the reasons assigned, we feel constrained to overrule respondent's demurrer, and direct a judgment of ouster.

MCALVAY, C. J., and KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred. OSTRANDER, J., concurred in the result.