### HAYES *v.* AUDITOR GENERAL.

CONSTITUTIONAL LAW — STATUTES — LOCAL ACTS—CLASSIFICATION ACCORDING TO POPULATION—COUNTY AGENTS—SALARY.

> Under the provisions of section 30, Art. 5, of the Constitution, prohibiting the passage of local or special acts, except upon the approval of the electors in the district affected, the statute (Act No. 115, Pub. Acts 1913), providing for a county agent and fixing the salary of the agent in counties having a population of upwards of 150,000 at $1,800 per annum, is constitutional and valid, and is not open to the objection that the classification could not be made upon the basis of difference in population. BROOKE, C. J., and McALVAY, J., dissenting.

Mandamus by John P. Hayes against Oramel B. Fuller, auditor general of the State of Michigan, to require the respondent to issue a warrant upon the State treasurer for the salary of said Hayes as county agent of Kent county. Submitted October 12, 1914. (Calendar No. 26,300.) Writ granted January 4, 1915.

*Leonard D. Verdier,* for relator.

*Grant Fellows,* Attorney General, for respondent.

MOORE, J. The question involved is admirably stated in the brief of the attorney general as follows:

"The relator is the county agent of the State board of corrections and charities for the county of Kent. He seeks by this proceeding to compel the auditor general to pay him the salary fixed by Act 115 of the Public Acts of 1913, being 'An act to fix the salaries of the county agents of the State board of corrections and charities appointed in and for counties having a population of one hundred fifty thousand or more, and to repeal all acts or parts of acts contravening the provisions of this act.'

"The respondent, upon the advice of the legal department of the State, declined to make such payment upon the ground that Act 115 of 1913 is in conflict with the provisions of section 30 of article 5 of the Constitution, which reads as follows:

" 'The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question. No local or special act shall take effect until approved by a majority of the electors voting thereon in the district to be affected.'

"It is insisted upon the part of the State that the act in question is a special act and that a general act can be made applicable.

"It is conceded that there are but two persons holding the office of county agent in the State of Michigan to whom this act applies. The 81 other county agents of the State are not within its provisions. It is therefore the claim of the respondent that the act is a special one, within the provisions of the section of the Constitution above quoted, and is therefore void. There are but two counties in the State having a population of 150,000, and we take it as settled by the case of *Attorney General, ex rel. Dingeman,* v. *Lacy,* 180 Mich. 329 (146 N. W. 871), that the language of the act cannot give it a general character by the use of words general in their nature, but which

limit its operation to special persons or special terri-
tory."

The attorney general cites many cases; among them
is *Henderson* v. *Koenig,* 168 Mo. 356 (68 S. W. 72,
57 L. R. A. 659), and insists that the last-named case
and the case of *Attorney General, ex rel. Dingeman,*
v. *Lacy, supra,* are controlling and justify the refusal
of the auditor general.

There is language used in the opinions cited which
afford a basis for this contention.   The cases, how-
ever, are distinguishable.   In *Henderson* v. *Koenig,*
*supra,* it is said at page 369 of 168 Mo., at page 75
of 68 S. W. (57 L. R. A. 659) :

"The Constitution has pointed out the precise and
specific method by which county officers are to be
paid, which is by fees; and if the legislature desires
to classify counties by population, and thus propor-
tion the amounts of fees the various judges of probate
may retain according to such ratio, then this must be
done by appropriate legislative enactments.   It can-
not be done by making one or more judges of probate
salaried officers, and compelling them to account for
the fees they may receive, and leaving the other
judges of probate throughout the whole State un-
hampered by any such conditions, for this would not
be 'a law uniform in its operation,' and therefore not
a compliance with section 12 of article 9."

And it was held that, as the Constitution provided
that the officer should be paid by fees, the legislature
could not provide he should be paid a salary.

In *Attorney General, ex rel. Dingeman,* v. *Lacy,*
*supra,* it appears the legislature undertook to call into
existence in Wayne county a judicial officer unknown
to all the rest of the State.   It was held invalid for
several reasons, which appear in the opinion.   In the
instant case no new office is created different from
those existing in all the other counties of the State.
These officers are appointed by the governor, paid by

the State, and are performing State functions as the agents of a State board. Why should it not be said that the entire State is 'the district affected' by the act? County agents, under the provisions of Act No. 6 of the Public Acts of 1907 (Extra Session) (2 How. Stat. [2d Ed.] § 3458), are charged with numerous duties relating to the care, investigation, and supervision of dependent, neglected, and delinquent children. It is a well-known fact that the problem of dependency, neglect, and delinquency of children is practically limited to communities with congested population. Counties having 150,000 inhabitants or more must have congestion of population, and must, by virtue of that fact, have numerous cases of children requiring the services of a county agent. Clearly the county agent in a county containing a large urban population will have much more to do, and should therefore be paid more, than in a small rural community, where the problem of delinquency is almost unknown. But it is said that the previous act, being based upon a per diem of service, gave ample recognition to the difference in the amount of work done, and that, if a county agent devoted his entire time to the work, he received $939 per annum under the old act, but that the agent in Kent or Wayne, who can devote no more than his entire time, will receive $1,800 under the act in question. Is not that a matter of legislative discretion rather than of judicial determination? The legislature undoubtedly had in mind the fact that, on account of the number of cases, their complexity, and the added responsibility entailed thereby, the counties with congested population demanded the services and therefore the pay of an efficient, high-grade officer with more or less expert knowledge and training, and that the amount of time devoted to the work was not necessarily the only criterion to measure the compensation.

We all know it costs much more to live in a large town than in the smaller counties, and it is very likely the legislature also took this fact into consideration in passing the law. It is not a new thing in this State to base the salary of an officer upon the population of the county where the service is to be rendered. The amount of the salaries paid the judges of probate depends upon the population of the counties. The more populous the county the larger the salary. 2 Comp. Laws, § 2552. Section 14454, 5 How. Stat. (2d Ed.), and notes thereto. A case not on all fours, but involving the same principle, is the case of the *People* v. *Brazee*, 183 Mich. 259 (149 N. W. 1053). Justice BROOKE, speaking for the court, said:

"The contention of the respondent that the act in question violates article 5, § 30, of the State Constitution, in that, under the guise of a general act, it is really local legislation, is, in our opinion, untenable. It is true that it provides for a license fee of $100 in cities containing over 200,000 population, and but $25 in other cities, and it is likewise true that at the present time there is but one city in the State of Michigan which has a population of more than 200,000. This fact, however, is not necessarily controlling. The act operates upon all citizens alike, except that a larger sum is charged for the license in larger cities than in smaller ones. Wherever the fee for the license is charged primarily for the purpose of regulation and not for the purpose of revenue, a variable sum may be fixed to meet the varying conditions under which the licensee operates. 25 Cyc. p. 608, and cases cited in note 74. It may well be that the legislature appreciated the fact that inspection for the purpose of proper regulation in large cities would be much more expensive than such inspection in smaller cities, and that the larger sum was fixed for the purpose of meeting such added expense of administration."

See, also, *State* v. *Sullivan*, 72 Minn. 126 (75 N. W. 8). The legislation was within the legislative discretion.

The writ will issue as prayed, but without costs.

KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred with MOORE, J.

MCALVAY, J. I cannot agree with the foregoing opinion. The act in question does not make a constitutional classification.

BROOKE, C. J., concurred with MCALVAY, J.