KATES v. READING.

1. JUSTICES OF PEACE—STATUTES—COMMON PLEAS COURT.
    Act No. 260, Pub. Acts 1929, consolidating courts of justices of the peace in cities of prescribed population into one court named common pleas court, does not legislate justices of the peace out of office, but continues justices' courts under another name and form without creating a new court.

2. COURTS—COURT CONSISTS IN ITS JURISDICTION RATHER THAN NAME.
    A court consists in its jurisdiction and functions and not in its title or name.

3. SAME—JUSTICES OF PEACE—CITIES—CONSTITUTIONAL LAW.
    Under the Constitution (article 7, § 1), the legislature may provide for courts in cities by means of justices of the peace or otherwise, at its discretion; and in view of exception in section 16, jurisdiction of justices' courts is not exclusive.

4. SAME—NEW COURTS MAY BE CREATED.
    Constitution does not prohibit the legislature from establishing new courts in cities and vesting in them the jurisdiction of justices of the peace.

5. CONSTITUTIONAL LAW—STATUTES—LOCAL ACTS—REFERENDUM.
   Although Act No. 260, Pub. Acts 1929, has an amendatory effect upon certain local acts, it is not an amendatory act in a constitutional sense requiring referendum vote (article 5, § 30), because it is independent and general in form, is not amendatory or supplementary in language, and operates alike on existing and future courts established under general or local law.

6. SAME—GENERAL ACT.
   Nor is said act a local act because the standard of population adopted by it renders it applicable only to the city of Detroit; there being a reasonable relation between population and the object of the act.

7. SAME—HOME-RULE ACT—JUSTICES OF PEACE.
   Act No. 260, Pub. Acts 1929, does not violate the home-rule act in that it deprives the city of Detroit of the right to regulate its minor courts, since such courts are not solely of municipal concern, but are instrumentalities for exercise of sovereign power, and are of such interest to the whole State that, in absence of constitutional limitation, the legislative power may not be subordinated to local considerations or authority.

8. SAME—STATUTES—VALIDITY.
   Act No. 260, Pub. Acts 1929, consolidating courts of justices of the peace in cities of prescribed population into one court named common pleas court, is valid.

Appeal from Wayne; Miller (Guy A.), Webster (Arthur), and Ferguson (Homer), JJ. Submitted April 7, 1931. (Calendar No. 35,526.) Decided April 14, 1931.

Mandamus by James A. Kates to compel Richard W. Reading, Detroit city clerk, to place his name on primary ballot as a candidate for justice of the peace. Arthur E. Gordon, presiding judge of common pleas court, intervened as defendant. Writ denied. Plaintiff appeals. Affirmed.

*Morris Garvett,* for plaintiff.

*John C. Bills* (*Leo I. Franklin,* of counsel), for intervener.

FEAD, J. Plaintiff sought mandamus to compel the clerk of the city of Detroit to place his name on the primary ballot as a candidate for justice of the peace. The clerk refused his application on the ground that, by Act No. 260, Pub. Acts 1929 (3 Comp. Laws 1929, § 16369 *et seq.*), the office of justice of the peace for the city of Detroit had been abolished. Plaintiff contends that Act No. 260 is unconstitutional.

The justices' courts in Detroit operated under Act No. 475, Local Acts 1903, and the charter of the city, adopted in pursuance of general law. There were six justices, functioning independently of each other, each responsible for all matters in relation to suits commenced before him. The testimony shows that, because of growth of population of the city, increase in litigation, lack of co-ordination among the justices necessarily arising out of the independence of their functions, together with some want of co-operation among them, such delay, inconvenience, expense, and injustice resulted to litigants, counsel, and witnesses that a remedy became advisable, if not imperative. Undoubtedly, the condition could have been ameliorated by voluntary action of the justices, but it was not. Probably some of the evils were inherent in the system and could not have been cured even by personal co-operation. Act No. 260 was adopted in an attempt to better the situation. Its purpose and purport are shown by its title:

"An act to consolidate into one court the courts of justices of the peace in any city having or which

may hereafter have, over two hundred and fifty thousand inhabitants; to prescribe the title and define the jurisdiction of and practice in such consolidated court; to fix the number, the time and mode of election and compensation, and to define the powers and duties of the judges thereof; to provide for the designation of a presiding judge of such court and to prescribe his powers and duties; to authorize such court to make and enforce rules governing the practice and procedure therein; to provide for a clerk of such court and to prescribe his compensation, powers and duties; to provide for a review of judgments rendered by such court and the taking and filing of transcripts of such judgments; to provide for the service of process issued from such courts; and to repeal all acts or parts of acts inconsistent herewith.''

At present, Detroit is the only city in the State having the prescribed population.

When it becomes operative in a city, Act No. 260 consolidates the existing independent justices' courts into one tribunal, names it the common pleas court, changes the names of the judicial officers to judges, co-ordinates the work under the direction of a presiding judge, and establishes the practice and procedure in certain respects. It does not legislate the justices of the peace out of office, but they continue as judges of the common pleas court to the end of their terms; and, except as otherwise specially provided in the act, the qualifications, terms of office, time and manner of election, compensation, jurisdiction, powers and duties of the judges, and the practice and procedure of the court, are made determinable by the laws, general and local, governing justices of the peace and their courts in such cities. Substantially, the departures from such laws are pertinent to the organization and operation of

a unified court. The keynote of the act, as expressed in the title and maintained in the body, is consolidation of existing courts. Under the authorities, it must be held that the act continues the justices' courts under another name and form and does not create a new court. See *Attorney General, ex rel. Hooper,* v. *Loomis,* 141 Mich. 547; *People, ex rel. Smith,* v. *City of Aurora,* 78 Ill. 218; *State, ex. rel. Stanton,* v. *Powell,* 109 Ohio St. 383 (142 N. E. 401); *Worthington* v. *London Guarantee & Accident Co.,* 164 N. Y. 81 (58 N. E. 102); *Johnson* v. *State,* 59 N. J. Law, 535 (37 Atl. 949, 39 Atl. 646, 38 L. R. A. 373). In the latter case it was said:

"A court consists in its jurisdiction and functions, and not its title or name."

May the legislature abolish the office of justice of the peace *eo nomine* and create such a consolidated court as is here provided?

We are not concerned with the cases relied on by plaintiff, holding that a justice of the peace is a constitutional officer who cannot be legislated out of office, as Act No. 260 makes no such attempt.

By mandatory language, the Constitution requires the establishment of a Supreme Court, circuit courts, probate courts, and justices of the peace in organized townships. These commands emphasize the permissive character of Constitution, art. 7, § 15:

"The legislature may provide by law for justices in cities."

Under the Constitution of 1850, article 6, § 17, the provision read:

"The legislature may increase the number of justices in cities."

Because of this language, and the fact that the legislature could not establish other courts than those named in the Constitution, except municipal courts, it may have been necessary, under the Constitution of 1850, to establish justices' courts in cities in order to complete the exercise of the judicial power of the State. *Allor* v. *Wayne County Auditors,* 43 Mich. 76, 100. But the necessity no longer exists, as the present Constitution, article 7, § 1, authorizes the legislature to establish, by general law, "other courts of civil and criminal jurisdiction, inferior to the Supreme Court." This, with the change in wording in the provision for justices in cities, clearly permits the legislature to provide for courts in cities by means of justices of the peace or otherwise, at its discretion.

The Constitution, article 7, § 16, provides:

"SEC. 16. In civil cases, justices of the peace shall have exclusive jurisdiction to the amount of one hundred dollars, * * * with such exceptions and restrictions as may be provided by law."

In contending that this section prohibits the legislature from taking such exclusive jurisdiction from justices and vesting it in other courts, counsel does not give force to the exception. The legislature, from early days, has evidenced its understanding that the exception is effective by enacting laws circumscribing the jurisdiction of justices and conferring on other courts original jurisdiction in cases involving less than $100. The power has been sustained by this court. *Milroy* v. *Mining Co.,* 43 Mich. 231; *Detroit Lbr. Co.* v. *Auxiliary Yacht "Petrel,"* 153 Mich. 528.

The Constitution does not prohibit the legislature from establishing new courts in cities and vesting in them the jurisdiction of justices of the peace.

Much less does it restrain the legislature from continuing jurisdiction in the same court under another name and form.

It is contended that Act No. 260 is merely amendatory of local acts governing justices' courts in the city of Detroit; therefore, is itself local (*Attorney General, ex rel. Cotter,* v. *Lindsay,* 221 Mich. 533); and is invalid without a referendum (Constitution, article 5, § 30).

The *Lindsay Case* involved Act No. 364, Pub. Acts 1921, amending Act No. 369, Pub. Acts 1919, which was "An act to supplement existing laws providing for the establishment and maintenance of municipal courts of record," etc. The "existing laws" were local acts. Act No. 369 was tied to them in an amendatory character by the word "supplement." Moreover, it contained an express referendum clause. Construed as merely amendatory of local acts, it was held local.

The act at bar is independent and general in form, not amendatory or supplementary in language, and operates alike on existing and future courts established under general or local law. Of course, it has an amendatory effect upon local acts, and may upon general law, in the respect that, because of inconsistency, it may modify or repeal their provisions. But this does not stamp it as amendatory in a constitutional sense. *People, ex rel. Drake,* v. *Mahaney,* 13 Mich. 481; *People* v. *Stimer,* 248 Mich. 272 (67 A. L. R. 552). If it did, the legislature would be without power to give full effect to general law governing matters already covered by local laws without a favorable referendum in all districts having such local laws. The *Lindsay Case* cannot be given such effect; nor does the Constitution so restrain the legislature.

If Act No. 260 applied only to the city of Detroit, it would not be difficult to consider it as purely amendatory of a local act. However, as it is general in application, it is to be visualized as leaving local laws untouched until certain conditions occur, upon which it supersedes them in some respects. Taking the courts as established under local acts, it superimposes a new organization, by consolidation, through law applicable alike to all cities which come within its terms. If it is otherwise a general law, Act No. 260 cannot be considered local as amendatory in character of local acts.

Plaintiff also urges that Act No. 260 is a local act because the standard of population adopted by it renders it applicable only to the city of Detroit.

The act is unlike that under consideration in *Mulloy* v. *Wayne County Bd. of Supervisors,* 246 Mich. 632, in that it has an open end through which cities are automatically brought within its operation when they attain the required population.

It differs from the act treated in *Attorney General, ex rel. Dingeman,* v. *Lacy,* 180 Mich. 329, where there was no showing of necessity or advisability, and in which it was held that population had no such reasonable relation to the object of the law as to justify classification upon it, because the city of Detroit presented no problems of domestic relations, except frequency, different from other communities. Here, population is of the essence of the condition sought to be corrected. Growth of population causes increase of litigation and requires more judges to handle it. When the litigation becomes burdensome, its proper disposal requires co-operation among the judges. A few will agree together better than many. And, as was shown by the testimony, the mass of litigation may become so great that even voluntary

co-operation would not solve the problem. It is not for the court to say whether the conditions render a remedy imperative nor what the remedy should be. These are legislative questions. It appearing that there is a reasonable relation between population and the object of the law, the act, general in form, must be held general within the Constitution. *People* v. *Brazee*, 183 Mich. 259 (L. R. A. 1916 E, 1146); *Burton* v. *Koch*, 184 Mich. 250; *Hayes* v. *Auditor General*, 184 Mich. 39; *Grinnell Bros.* v. *Moy*, 230 Mich. 26; *Dunne* v. *Railway Co.*, 131 Mo. 1 (32 S. W. 641); *State* v. *Ames*, 91 Minn. 365 (98 N. W. 190); *In re Church*, 92 N. Y. 1; *Bingham* v. *Bd. of Supervisors of Milwaukee County*, 127 Wis. 344 (106 N. W. 1071); *Cooper* v. *Rollins*, 152 Ga. 588 (110 S. E. 726, 20 A. L. R. 1105); *Mortland* v. *State, ex rel. Christian*, 52 N. J. Law, 521 (20 Atl. 673); 12 C. J. p. 1134.

It is urged that Act No. 260 deprives the city of Detroit of the right to regulate its minor courts and violates the home-rule principle of the State. We are cited to no constitutional provision which suggests such principle as a restriction on the power of the legislature to establish or consolidate courts having jurisdiction over other than inhabitants of the city. Such courts are not solely of municipal concern but are instrumentalities for exercise of sovereign power and of such interest to the whole State that, in the absence of express constitutional limitation, the legislative power cannot be subordinated to local considerations or authority.

Act No. 260 is valid, and the judgment of the circuit court denying mandamus is affirmed.

Butzel, C. J., and Wiest, Clark, McDonald, Potter, Sharpe, and North, JJ., concurred.