## CITY OF ALLEGAN, MICH., v. CONSUMERS' POWER CO.

### No. 6685.

Circuit Court of Appeals, Sixth Circuit.

June 6, 1934.

J. C. Bills, of Detroit, Mich. (Clare E. Hoffman, Leo W. Hoffman, and Carl E. Hoffman, all of Allegan, Mich., on the brief), for appellants.

Edgar Johnson, of Grand Rapids, Mich., and B. J. Onen, of Battle Creek, Mich. (Travis, Merrick, Johnson & McCobb, of Grand Rapids, Mich., and Weadock & Whiting, of New York City, on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The controversy arises out of the effort of the city of Allegan to amend its charter in order to increase its bonding limit for the purpose of completing an electric light and power plant, and the opposition to such project of the appellee as a property owner and municipal taxpayer. The appeal is from an interlocutory injunction restraining the city from borrowing money and issuing bonds.

The questions presented involve the validity of the attempted charter amendment, under the Constitution and laws of Michigan, the authority of the Federal Emergency Administration of Public Works to loan money to the city for the purpose indicated, and the constitutionality of Title 2 of the National Industrial Recovery Act (40 USCA § 403), if applicable to the purchase of the proposed bonds. A number of subordinate questions are likewise involved.

The appellee, hereinafter called the "utility," is a Maine corporation, but a taxpayer in Allegan, owning property therein and supplying its inhabitants with electricity. The city is governed in many respects by the provisions of the so-called Fourth Class Cities Act, being Act No. 215, Pub. Acts 1895. On June 1, 1930, it issued general obligation bonds for the construction of an electric lighting plant in the sum of $185,000, of which $181,000 is still outstanding. It also voted to issue mortgage bonds totaling $300,000, to be secured by a franchise and mortgage upon the lighting plant. On April 6, 1931, the electors voted to borrow an additional $170,000 on general obligation bonds, which have not yet

been issued. The Fourth Class Cities Act limits the city in borrowing for the purpose of erecting and maintaining a municipal dam and lighting works to a sum not exceeding 5 per cent. of the assessed value of the property in the city as shown by the last preceding tax roll. The total assessed valuation of the property in the city for the year 1931 was $3,649,315; for 1932, $3,518,090; and for 1933, $3,403,775.

The present Constitution of Michigan, ratified by the people in 1909, incorporates in article 8 certain so-called home rule provisions. They are:

"Sec. 20. The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts.

"Sec. 21. Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this state."

Following the ratification of the Constitution of 1909, the Legislature passed the so-called Home Rule Act (Pub. Acts 1909, No. 279). This, as amended by section 2231, C. L. 1929, permits each city to provide by its charter for the borrowing of money on the credit of the city, and issuing bonds therefor for any purpose within the scope of its powers, provided that the net bonded indebtedness incurred for all public purposes shall not at any time exceed 10 per cent. of the assessed value of all real and personal property in the city. On April 6, 1931, a proposed amendment to the charter of the city was submitted to its electors and ratified, which purported to increase the total authorized indebtedness for the construction and maintenance of electric lighting works from 5 per cent. as limited by the Fourth Class Cities Act (Pub. Acts 1895, No. 215, c. 27, § 4) to 10 per cent. of the assessed value of the city's property, being an attempt to incorporate into the city's charter one of the "Permissible Charter Amendments" of the Home Rule Cities Act (section 2228 et seq.). The attempted enlargement by the city of its bonding limit is attacked as void, and the District Court so

held it to be on the ground that the authority granted by the Constitution to the Legislature to limit the extent to which cities may incur indebtedness excludes the power of Home Rule Cities to legislate upon the same subject, citing as authority Harsha v. City of Detroit, 261 Mich. 586, 246 N. W. 849, 90 A. L. R. 853; City of Kalamazoo v. Titus, 208 Mich. 252, 175 N. W. 480; City Comm. of City of Jackson v. Vedder, 209 Mich. 291, 176 N. W. 557; Attorney General v. Lindsay, 178 Mich. 524, 145 N. W. 98. The city defends the validity of its charter amendment in reliance upon North Michigan Water Company v. Escanaba, 199 Mich. 286, 165 N. W. 847, and other cases.

We should be under the necessity at this point of analyzing the Michigan cases cited in an endeavor to ascertain the Michigan law were it not for the fact that on March 9, 1934, since the hearing below, the Legislature of Michigan passed and gave immediate effect as of March 13th to a so-called validating act, which provides: "Section 1. Whenever bonds for electric light and/or power, or other light and/or power purposes have heretofore been approved by the requisite majority of the qualified voters of any city having a population not to exceed four thousand five hundred according to the last federal census, as fixed by the several enabling acts under which the election was held, the said bonds issued or to be issued as so approved by the voters to the amount and for the purposes submitted to the voters are hereby confirmed and validated and declared to be legal and valid obligations of the city, if, as and when so issued or to be issued, notwithstanding the limitations fixed by any charter or statute as to the power of such city to borrow money to be used for the purpose of purchasing, constructing and/or maintaining such lighting and/or power works or projects and/or notwithstanding the total amount expended or to be expended therefor shall exceed the amount of the estimate of expense thereof." It is not disputed by the utility that the terms of the validating act are sufficiently broad to cover the bonds which the city proposes to issue, but the act is itself attacked as unconstitutional on the ground that it is in conflict with section 20, article 8, of the Michigan Constitution, which requires the Legislature to restrict the borrowing powers of cities; that it is a local act within section 30, of article 5, of the state Constitution, which provides that no local act may be passed where a general law can be made applicable; that whether a general act can be made applicable is a judicial question, and that no local or special

act shall take effect until approved by a majority of the electors voting thereon in the district to be affected, and on the further ground that it violates the Fourteenth Amendment to the Constitution of the United States in that the classification therein made is not reasonable.

It is of course axiomatic that what the Legislature was empowered to do originally it can subsequently confirm, providing no vested interests have meanwhile arisen. It is claimed, however, by the utility that the validating act authorizes unlimited borrowing by the city, and since the constitutional mandate is that the Legislature restrict such borrowing, it cannot retroactively confirm that which it could not in the beginning authorize. The Constitution, however, is silent as to the kind and extent of the restriction which the Legislature must put upon cities. The borrowings which it now undertakes to validate are not those to be made in the future, whose extent cannot be ascertained, but are borrowings which have already been made or authorized, and whose extent and purpose were known to the Legislature when the act was passed. Moreover, the statute is not itself without restriction. The bonds validated are only those which have been issued or approved by the requisite majority of the qualified electors of the city. As was said by Mr. Justice Cooley in an early case, People ex rel. Drake v. Mahaney, 13 Mich. 481, 498, in construing an identical mandate of the Constitution of 1850, whereby the Legislature was directed to put a limitation upon taxation: "The constitution has not prescribed the character of the restriction which shall be imposed, and from the nature of the case it was impossible to do more than to make it the duty of the Legislature to set some bounds to a power so liable to abuse. A provision which, like the one complained of, limits the power of taxation to the actual expenses as estimated by the governing board, after first limiting the power of the board to incur expense within narrow limits, is as much a restriction as if it confined the power to a certain per centage upon taxable property, or to a sum proportioned to the number of inhabitants in the city. Whether the restriction fixed upon would as effectually guard the citizen against abuse as any other which might have been established, was a question for the legislative department of the government, and does not concern us on this inquiry." If this commentary on the character of the restrictions required is sound, and we are cited to no Michigan cases which challenge it, the val-

idating act is not unconstitutional upon the first ground urged.

In determining whether statutes are local or general within the meaning of article 5, § 30, of the Constitution, the Supreme Court of Michigan has uniformly upheld statutes which are general in form, and has construed as general laws those which classify cities or counties according to population where the classification has some reasonable relation to the object of the law. People v. Brazee, 183 Mich. 259, 149 N. W. 1053, L. R. A. 1916E, 1146; Burton v. Koch, 184 Mich. 250, 151 N. W. 48; Hayes v. Auditor General, 184 Mich. 39, 150 N. W. 331; Grinnell Bros. v. Moy, 230 Mich. 26, 203 N. W. 167; Kates v. Reading, 254 Mich. 158, 235 N. W. 881, 883. It has struck down only those statutes which by their very terms prevent cities or counties from coming within their purview when they attain the required population, as in Mulloy v. Wayne County Board of Supervisors, 246 Mich, 632, 225 N. W. 615, and those in respect to which it is clear that the classification has no reasonable relation to the object of the law, as in Attorney General v. Lacy, 180 Mich. 329, 146 N. W. 871. As was said in the Kates Case, supra: "It is not for the court to say whether the conditions render a remedy imperative nor what the remedy should be. These are legislative questions. It appearing that there is a reasonable relation between population and the object of the law, the act, general in form, must be held general within the Constitution." Whether, when the validating act was passed there were other cities of 4,500 population or less which had issued or authorized bonds in excess of the statutory or charter limitation, we are not advised by the record; but even if there were none, the circumstance is not conclusive under the Michigan decisions. It may well be that the Legislature in making its classification had in mind the cohesiveness of the population in small urban communities, the large proportion of home owners therein, the greater interest taken in questions of municipal indebtedness and taxation, the greater sense of responsibility on the part of officials to the electors, and other considerations operating in small, but neither at all nor to the same extent in larger cities. We cannot say upon this record, and in the light of the Michigan decisions, that the classification in the validating act is unreasonable, and what we have said in this connection in our opinion also disposes of the contention that the classification is in violation of the provisions of the Fourteenth Amendment to the Federal Con-

stitution. Concluding that the Act of March 9, 1934, is a valid exercise of legislative power, and that it reaches the authorized bond issues here attacked, it becomes unnecessary to decide whether the city's attempted charter amendment is valid under the Constitution and laws of Michigan.

We come then to the questions raised with reference to the scope and constitutionality of the National Industrial Recovery Act. On December 1, 1933, it was announced by the Public Works Administration that a loan and grant had been made to the city of Allegan in the sum of $410,000 for the construction of an electric power plant, dam, and distribution system, 30 per cent. of the amount to be advanced by the Public Works Administration as a grant, the balance to be a loan secured in part by 4 per cent. general obligation bonds and in part by first mortgage bonds. It is urged by the utility that the proposed loan and grant do not properly qualify under the terms of the act, and that if they do the act is to that extent unconstitutional. Title 2 of the Recovery Act, 40 USCA § 402, requires the administrator to prepare a comprehensive program of public works, and enumerates what shall be included. Subsection (b) of the enumeration includes "transmission of electrical energy." As the city's project contemplates the generation and distribution of electricity, this is urged as the reason why its proposed electric lighting plant does not qualify as an activity to be aided under the Recovery Act. It is also urged that if, notwithstanding section 402 (b), we are to hold that the proposed loan comes within the provisions of the act, the act is unconstitutional, particularly with respect to section 203 (d) of title 2 thereof (40 USCA § 403 (d), which provides: "The President, in his discretion, and under such terms as he may prescribe, may extend any of the benefits of this chapter to any State, county, or municipality notwithstanding any constitutional or legal restriction or limitation on the right or power of such State, county, or municipality to borrow money or incur indebtedness." In respect to this section, it is sufficient to say that the city does not assert any authority for its proposed bond issue as being derived from it. The city rests its case upon its authority to issue bonds under state law. We have found that by reason of the passage of the validating act it has such authority. There is therefore no necessity to determine the validity of or to construe section 203 (d).

Aside from this, however, we are of the opinion that the utility is without right to raise any question either as to the effect of or the constitutionality of the Recovery Act in the present suit. As a federal taxpayer it neither has nor asserts such right. It relies upon its status as a taxpayer and as a property owner in Allegan.

It has long been settled that the courts have no power per se to review and annul acts of Congress on the ground that they are unconstitutional. That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such act. Then the power exercised is that of ascertaining and declaring the law applicable to the controversy. The party who invokes the power must be able to show not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally. If a case for preventive relief be presented, the court enjoins in effect not the execution of the statute, but the acts of the official, the statute notwithstanding. Massachusetts v. Mellon, 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078; Heald v. District of Columbia, 259 U. S. 114, 42 S. Ct. 434, 66 L. Ed. 852; Cusack Co. v. City of Chicago, 242 U. S. 526, 37 S. Ct. 190, 61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594; Plymouth Coal Co. v. Pennsylvania, 232 U. S. 531, 34 S. Ct. 359, 58 L. Ed. 713; Arkadelphia Milling Company v. St. Louis S. W. Ry. Co., 249 U. S. 134, 39 S. Ct. 237, 63 L. Ed. 517; Williams v. Riley, 280 U. S. 78, 50 S. Ct. 63, 74 L. Ed. 175. The injury which is here claimed to threaten the utility is said to arise out of the possibility that the loan and grant to the city by the Public Works Administration may be declared invalid, and that the Government may demand an immediate return of its money, Butte A. & P. R. Co. v. United States, 61 F.(2d) 587 (C. C. A. 9), in which event the city will be required to lay a tax for the purpose of repayment, and such repayment must be made without regard to whether the money was secured by general obligation bonds or by mortgage bonds, and that the utility, paying nearly 10 per cent. of all of the taxes in Allegan, will suffer grave loss.

A number of important considerations, however, seem to have been overlooked. The attack upon the bond issue, based upon the unconstitutionality or limited scope of the federal statute, is not an attack in essence upon the validity of the bonds, but a challenge

to the power of the Public Works Administration to purchase them, and to the authority of the city to sell them to the Government. Although it is conceded by the city that it proposes to finance construction by selling its bonds to the Public Works Administration, which is willing to purchase them, such sale will not necessarily follow. Section 2696, C. L. Mich. 1929, provides that before any bonds in excess of $25,000 can be sold at private sale, they must be offered for sale to the public on seven days' notice, and if no satisfactory bids are received for them they can then be sold privately. The city asserts that all statutory requirements will be followed in the sale of the bonds here involved, and there is no reason to assume the contrary. Moreover, the utility urges upon us in another phase of the case that the Public Works Administration is not the only possible market for the challenged securities. There is no certainty therefore that power will ever be unconstitutionally exercised under the authority of the Recovery Act.

Aside from this, however, the claimed threat of injury to the utility rests upon the assumption that the bonds which the Public Works Administration expects to purchase are invalid and so without value, and that the money to be paid for them will be squandered and lost in an improvident enterprise. There is no warrant for such assumption in the record. Having disposed of the issue of validity under state law, the bonds are valid security for the advancements made to the city and any claim to reimbursement may be asserted against them in the event that in a proper suit it is held that there was wanting authority to purchase them. In other words, before any substantial threat of injury to the utility as a taxpayer or property owner of the city appears, it must be assumed that the Government will not be able to recover its advancement out of the obligations it holds; that the city will not be able to resell or refund the securities for the purpose of repayment, and that the investment of the city in its enterprise will be wholly or in substantial part lost, and the city left without resource for repayment except by a tax levy. These assumptions are based upon speculations, and the threatened injury to the utility is so remote that it is difficult to recognize that it is immediately in danger of sustaining some direct injury. One who would strike down a statute must show that the alleged unconstitutional feature injures him. Heald v. District of Columbia, supra. Cases in which it is sought by a stockholder in a corporation to enjoin the purchase of securities issued under an invalid statute, or the payment of a tax unlawfully assessed, are of doubtful analogy to the present situation. The interest of a stockholder in the application of the funds of the corporation is direct and immediate, and likewise is the interest of a taxpayer of a municipality in the application of its moneys, and the remedy by injunction to prevent their misuse is not inappropriate. Massachusetts v. Mellon, supra; Smith v. Kansas City Title & Trust Co., 255 U. S. 180, 41 S. Ct. 243, 65 L. Ed. 577; Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759; Brushaber v. Union Pacific Railroad Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493. There is no contention here that the money to be borrowed by or granted to the city will be misapplied or lost in the purchase of doubtful securities. The most that can be said is that it may not be immediately available to meet a sudden demand for its restoration. That it will not be available ultimately or within such reasonable time as the Government or a court of equity may require is neither demonstrated nor demonstrable.

A final contention remains to be noted. The city under the validating act is authorized to sell its bonds previously approved. It is claimed that authority to sell does not include authority to pledge, and since the announcement of the Public Works Administrator indicates the nature of the advancement to the city to be a loan, the city is without power to avail itself of such aid. The contention is without merit. One who purchases municipal obligations from the city in a true sense loans his money to the city. The transaction with respect to the evidences of debt is nevertheless a sale by the borrower and a purchase by the lender. It is otherwise when securities are pledged for the payment of a debt with title in the borrower prior to default, and with the right of the lender to enforce a deficiency upon foreclosure and sale of the securities for an amount insufficient to liquidate the debt. There is no contention that the transaction here contemplated embraces such conditions. Moreover, the city asserts it will sell and not pledge its bonds, and the Government proposes to buy the city's bonds, and not take them as collateral. If the agreement contemplated is otherwise, injunctive relief in that respect may still be sought and granted.

It follows from what we have said that the interlocutory injunction heretofore issued must be set aside, and the case remanded to the District Court for further proceedings consistent herewith.