AVIS RENT-A-CAR SYSTEM, INC v CITY OF ROMULUS

THE HERTZ CORPORATION v CITY OF ROMULUS

Docket Nos. 57857, 57936, 57937. Argued April 19, 1977 (Calendar Nos. 2, 3).—Decided June 13, 1977. Rehearing denied 401 Mich 951.

Avis Rent-A-Car System, Inc., and The Hertz Corporation brought complaints against the City of Romulus, Wayne County, and Romulus Community Schools for recovery of taxes paid to defendants under protest. Avis and Hertz operate car rental concessions in buildings leased from the Wayne County Road Commission at Metropolitan Airport in Romulus. Plaintiffs claimed that the property was exempt from taxation by statute. The defendants asserted that the exemption did not apply because plaintiffs' operations are at an airport located in a county of more than 1,000,000 population. The Wayne Circuit Court, Richard M. Maher, J., in *Avis*, and George T. Martin, J., in *Hertz*, granted summary judgments for plaintiffs on the ground that the statute restricting the exemption in counties of more than 1,000,000 population is unconstitutional. The Court of Appeals, Bronson, P. J., and V. J. Brennan and D. E. Holbrook, Jr., JJ., affirmed (Docket Nos. 21134, 21714, 21715). Defendants appeal. *Held:*

1. A population qualification must have a reasonable relation to the subject matter of the legislation and must furnish some apparent reason for the legislation differing from that applicable to other municipalities having a substantial difference in population. A population classification can never be sustained where it is a manifest subterfuge.

2. The legislation which limits the application of the tax exemption granted to concessionaires at airports by requiring the concessionaire to meet "basic tests" is applicable only to airports in counties with more than 1,000,000 population. A reasonable relationship between the population qualification and the limiting of a tax exemption has not been demonstrated in this case. The legislative conclusion must have been that

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 16 Am Jur 2d, Constitutional Law § 511.
[3] 16 Am Jur 2d, Constitutional Law § 191.

these airports will attract concessions without the lure of a tax exemption. The attraction, however, is not a function of county population, but depends upon the volume of traffic flowing through the airport. The legislation withdraws the exemption not only from concessions at Metropolitan Airport but could apply also to Detroit City Airport and Grosse Ile Municipal Airport.

3. The provision of the statute which places restrictions on tax exemptions for operators of concessions at airports located in counties of more than 1,000,000 population violates the Constitution as a local act passed in a case where a general act could be applied.

4. The exemption for operators of concessions at airports granted by the remaining portion of the statute can operate effectively without the portion which is unconstitutional and is therefore severable and remains effective.

Affirmed.

Justice Williams, dissenting, would hold that the statute is constitutional. The initial purpose of the legislation was to expand the tax base by making the users and lessees of public land taxable. The exemptions for concessionaires were to encourage the operation of concessions at public places where services might not be forthcoming without such a tax exemption. The statute was amended by narrowing those exemptions in certain cases where the airports are located in counties of 1,000,000 or more population. The size of the county itself may not provide sufficient rationale for the subclassification, but the Legislature prescribed in addition three basic tests, the purpose of the first of which is to exclude from taxation concessionaires who have to be induced by exclusive contract to render service at the airport, while permitting taxation where the business is so attractive that more than one concessionaire seeks to and does render service. The Legislature has not created an unreasonable or irrational classification or tax policy, because it based the classification on ability to pay, a normal tax classification.

1970 PA 174 held unconstitutional.

65 Mich App 119; 237 NW2d 209 (1975) affirmed.

OPINION OF THE COURT

1. TAXATION—EXEMPTIONS—AIRPORT CONCESSIONS—POPULATION CLASSIFICATION—CONSTITUTIONAL LAW.

   Restrictions on the property tax exemption for operators of concessions at airports which apply only in counties of more

than 1,000,000 population are unconstitutional as a local act passed in a case where a general act could be applied because a reasonable relationship between the population qualification and the limiting of the exemption has not been demonstrated (Const 1963, art 4, § 29; MCL 211.181[2]; MSA 7.7[5][2]).

2. STATUTES—LOCAL ACTS—POPULATION CLASSIFICATION—CONSTITUTIONAL LAW.

A population classification in an act must have a reasonable relation to the subject matter of the legislation and must furnish some apparent reason for legislation differing from that applicable to other municipalities having a substantial difference in population; a population classification can never be sustained where it is a manifest subterfuge (Const 1963, art 4, § 29).

3. STATUTES—TAXATION—EXEMPTIONS—SEVERABILITY.

A property tax exemption for operators of concessions at airports can effectively operate without the portion which is unconstitutional, a restriction on the exemption for airports located in counties of more than 1,000,000 population; therefore the sections of the act are severable and the exemption remains effective (MCL 8.5, 211.181; MSA 2.216, 7.7[5]).

DISSENTING OPINION

WILLIAMS, J.

4. TAXATION—POPULATION CLASSIFICATION—AIRPORT CONCESSIONS—CONSTITUTIONAL LAW.

*The reasonableness of a taxation classification which narrows the exemption from property taxes of operators of airport concessions in certain cases where the airports are located in counties of 1,000,000 or more population must bear some relationship to the ability to pay the tax over against the purpose of the exemption itself (Const 1963, art 9, § 3; MCL 211.181; MSA 7.7[5]).*

5. TAXATION—EXEMPTIONS—AIRPORT CONCESSIONS—POPULATION CLASSIFICATION—CONSTITUTIONAL LAW.

*Restrictions on the property tax exemption for operators of certain concessions at airports meeting basic tests which apply only in counties of more than 1,000,000 population are not unconstitutional, because the purpose is to exclude from taxation concessionaires who have been induced by exclusive contract to render service at an airport, while permitting taxation where the business is so attractive that more than one conces-*

*sionaire seeks to and does render service; the classification is not unreasonable because it is based on ability to pay, a normal tax classification (Const 1963, art 9, § 3; MCL 211.181; MSA 7.7[5]).*

*Barris, Sott, Denn & Driker* for plaintiff Avis Rent-A-Car System, Inc.

*Goodenough, Smith & May* (by *David E. Nims, III)* for plaintiff Hertz Corporation.

*Miller, Canfield, Paddock & Stone* (by *Samuel J. McKim, III)* for defendant Romulus Community Schools.

*Robert Reese* for defendant City of Romulus.

*Aloysius J. Suchy,* Corporation Counsel (by *John K. Godre)* for defendant Wayne County.

COLEMAN, J. Defendants Romulus Community Schools and the City of Romulus appeal the Court of Appeal's affirmance of summary judgments against them entered by the Wayne County Circuit Court for plaintiffs Avis Rent-a-Car System, Inc. (Avis) and The Hertz Corporation (Hertz).[1]

Under legislation enacted by 1970 PA 174, Romulus, the Romulus Community Schools and Wayne County have taxed Avis and Hertz for their operations at the Wayne County Metropolitan Airport (Metro). In each case, the trial courts found plaintiffs exempt and 1970 PA 174 unconstitutional.

The dispositive issues are whether 1970 PA 174 is an act in violation of Const 1963, art 4, § 29,[2] or

---

[1] The county does not appeal.

[2] "The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question. No local or special act shall take effect until approved by two-thirds of the members elected to and serving in each house and by a majority of

art 9, § 3³ or both, and, if so, whether the act is severable. (MCLA 211.181; MSA 7.7[5]).⁴

We find that subsection (2) of 1970 PA 174 is unconstitutional. We also find that it is severable because the balance of the act remains operable.

It is thus unnecessary to detail the factual differences between the Avis and Hertz cases.

---

the electors voting thereon in the district affected. Any act repealing local or special acts shall require only a majority of the members elected to and serving in each house and shall not require submission to the electors of such district."

³ "The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. The legislature may provide for alternative means of taxation of designated real and tangible personal property in lieu of general ad valorem taxation. Every tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates."

⁴ "(1) When any real property which for any reason is exempt from taxation is leased, loaned or otherwise made available to and used by a private individual, association or corporation in connection with a business conducted for profit, except where the use is by way of a concession in or relative to the use of a public airport, park, market, fairground or similar property which is available to the use of the general public, the lessees or users thereof shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property. The foregoing shall not apply to federal property for which payments are made in lieu of taxes in amounts equivalent to taxes which might otherwise be lawfully assessed or property of any state-supported educational institution, enumerated in section 4 of article 8 of the constitution.

"(2) In counties of over 1,000,000 in order to determine whether a lessee or user at an airport is a concessionaire within the provisions of this act, and whether the use of real property used in connection with the concession operation is essential to the concession operation so as to come within the exception contained in this act, it is required that the following basic tests be met:

"(a) It shall have the exclusive right and duty to render a necessary or customary service, based on a contract entered into requiring that it render goods or services either to the grantor or to the general public on behalf of the grantor;

"(b) The service rendered must be available to the general public on a nondiscriminatory basis;

"(c) Use of real property in connection with a service concession must be a necessary and integral part of the concession operation."

I

1945 PA 327, the Aeronautics Code, permitted a political subdivision "to confer the privileges of concessions". This was amended by 1956 PA 163 to permit the subdivision "to enter into * * * grants of privileges of concessions with any person * * * for the operation, use or occupancy, either exclusively or in common with others, of all or any part of * * * any buildings or structures". (See MCLA 259.133; MSA 10.233.)

Avis and Hertz were granted concessions at Metro each "in common with two others". They also leased some airport land and built service buildings prior to passage of PA 174.

1953 PA 189 concerned taxing the lessees or users of tax-exempt property. They were "subject to taxation in the same amount and to the same extent as though the lessee or user was the owner of such property". An exception was made "where the use is by way of a concession in or relative to the use of a public airport, park, market, fair ground or similar property which is available to the use of the general public".

In 1966, Romulus tried to tax Avis for its use of the land at Metro. After Avis filed a motion for summary judgment, our opinion in *Kent County v Grand Rapids,* 381 Mich 640; 167 NW2d 287 (1969), was issued. The Court said if the agreement between the airport authority and the business "fully met the requirements of the aeronautics code" and granted a concession, the property was tax exempt.[5] Avis was granted a summary judgment.

Romulus filed another suit alleging the service

---

[5] *Compare Detroit v Tygard,* 381 Mich 271; 161 NW2d 1 (1968), where the agreement did not give a concession.

building to be personal property. Avis won a consent judgment in July 1972. Hertz also won a challenge before the State Tax Commission in 1970 under act 189.

Between the two Avis court actions, Romulus is said to have sought help from the Legislature. 1970 PA 174 added a section to PA 189 applicable to concessions only in airports and only in "counties of over 1,000,000".

Romulus again taxed Avis and Hertz. The school district and county intervened as defendants in the circuit court cases commenced thereafter by plaintiffs.

Avis and Hertz claimed that PA 174 violated art 4, § 29 which prohibits the passing of any "local or special act in any case where a general act can be made applicable". Determining "whether a general act can be made applicable shall be a judicial question".

The trial court in *Avis* said legislation can make population classifications which "have a reasonable relation to the purpose for which the statute is enacted". The court could "see absolutely no reasonable relationship between the population of a county in which an airport is located and the entitlement of a concessionaire in that airport to tax-exempt status under Act 189". Noting that Romulus had cited statistics concerning airport traffic, the court said this "proved the inherent defect in Act 174" because "there is no correlation between the county in which an airport is located and the traffic which passes through the airport".

The court also discussed Const 1963, art 9, § 3 which requires that "[e]very tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates". The court said PA 189 created "a single class". Act

174 "takes this single class and creates a subclass of airports alone" and further creates a "subclass of *airports located in counties of one million people*". (Emphasis in original.)

The result would permit Romulus "to collect taxes from a single concessionaire at a single airport in a single county, while no other local unit of government can collect from similar concessionaires at airports or other like property in any other county of this state". The court said it was "shown absolutely no basis for the Legislature having created a subclass of a subclass of a class".

The Court of Appeals affirmed the lower court's constitutional findings.[6] Regarding Const 1963, art 4, § 29, it said "[t]he decisive issue * * * is whether the population classification in 1970 PA 174 has a reasonable relationship to the purpose of the statute". It adopted "the well-reasoned opinion of the circuit judge" on this point.

The Court also agreed that Const 1963, art 9, § 3 was violated. The Court said there "must be a reasonable basis for a classification which seeks to treat property differently for tax purposes". The Court was "unable to discern real or substantial differences which reasonably suggest the propriety of substantially different treatment as between Wayne County airports and airports in other counties".

II

We agree with the trial court and Court of Appeals that Const 1963, art 4, § 29 is violated by 1970 PA 174. It is a local act passed in a case where a general act could be applied.

---

[6] The Court of Appeals used its *Avis* decision to affirm the summary judgment granted Hertz.

In *Attorney General ex rel Dingeman v Lacy,* 180 Mich 329; 146 NW 871 (1914, the Legislature wanted to establish a domestic relations court "in each county * * * which has a population of upwards of two hundred fifty thousand". Wayne was the only county that qualified. It was "certain that the law can never become operative in a vast majority of the counties". Quoting from a treatise, the Court said population classification "must have a reasonable relation to the subject matter of the legislation, and must furnish some fairly apparent reason for legislation differing from that applicable to other municipalities having a substantial difference in population". A population classification "can never be sustained where it is, as in the case at bar, a manifest subterfuge".[7]

The plaintiff in *Hayes v Auditor General,* 184 Mich 39; 150 NW 331 (1915), was a county agent for Kent County. Agents in "counties having a population of one hundred fifty thousand or more" were specially compensated. Only two counties qualified—Wayne and Kent. The Auditor General refused to pay saying the legislation was local in a case where a general statute should have been passed.

The Court ordered payment. It distinguished *Lacy.* The county agent was a state officer performing a state function. The agent dealt with problems "practically limited to communities with

---

[7] The legislation must also be applicable to other counties which may qualify. In 1927, the Legislature established "a civil service commission in and for counties having a population of 300,000 or more". Only Wayne qualified "and no provision is made in the act by which it will become effective in other counties as they attain the required population". The Court in *Mulloy v Wayne County Board of Supervisors,* 246 Mich 632; 225 NW 615 (1929), said this was a local act. The Court said "by its very terms, it is made clear it was not intended the act should be put in force in" counties other than Wayne. The Court would reach "[n]o other conclusion * * * than that it is local legislation".

congested population". Counties greater than 150,-
000 "must have congestion of population, and
must * * * have numerous cases * * * requiring
the services of a county agent".

The Legislature might have considered that "it
costs much more to live in a large town than in
the smaller counties". The Court noted that oth-
ers, such as probate judges, had their salary based
on county population. Also see *Chamski v Wayne
County Board of Auditors,* 288 Mich 238; 284 NW
711 (1939) and *Tribbett v Village of Marcellus,* 294
Mich 607; 293 NW 872 (1940).

The plaintiff in *Monroe v Judge of Police Court
of Grand Rapids,* 311 Mich 76; 18 NW2d 371
(1945), pled guilty in the Grand Rapids police court
which was established before the Legislature was
prohibited from passing local acts. After the prohi-
bition was effective, an act was passed preventing
the taking of appeals from police courts in cities
"of a population of not less than one hundred
thousand * * * nor more than two hundred thou-
sand". Plaintiff said this was a local act.

The Court agreed. It was "unable to see any
distinction between the needs incident to this
phase of the law in cities having a population
between 100,000 and 200,000 and other cities hav-
ing a population slightly less than 100,000 or more
than 200,000". The Court found there was not "a
just basis of classification such as would sustain
the provision".[8]

---

[8] *Compare Sullivan v Graham,* 336 Mich 65; 57 NW2d 447 (1953),
where the legislation required residential builders in counties of more
than 250,000 people to obtain licenses. When passed, the legislation
applied to four counties. It would include others that grew to 250,000.
The Court said it was "more inclined to uphold the act where there is
a reasonable relationship between the restriction and the population".
*Also see The Irishman's Lot, Inc v Secretary of State,* 338 Mich 662;
62 NW2d 668 (1954).

In *Wayne Circuit Judges v Wayne County,* 383 Mich 10; 172 NW2d 436 (1969), the Court considered a "legislative design for financing probation services". It did "not apply to probation departments heretofore established in any county of over 500,000 population". The Court said the legislation was "to discharge the state's responsibility for the correction and rehabilitation of criminals". If population was related to this "it would be that in the populous areas * * * there is a greater need for * * * the state's resources". The Court could not "reconcile the legislative intent * * * with the legislative scheme". The legislation had a "discriminatory thrust" and was unconstitutional.

1970 PA 174 limits the application of the tax exemption granted by 1953 PA 189 by requiring the concessionaire to meet "basic tests". This is appropriate. However, the legislation has a discriminatory thrust. It is applicable only to airports and only to airports in counties with more than 1,000,000. We require that a reasonable relationship between those qualifications and the limiting of a tax exemption be demonstrated. It has not been demonstrated in this case.

The legislative purpose in 1970 PA 174 was to withdraw a tax exemption from concessions at airports located in counties over 1,000,000 people (only Wayne County). The legislative conclusion must have been that these airports will attract concessions without the lure of a tax exemption. The attraction, however, is not a function of county population. It depends on the volume of traffic flowing through the airport. Under this legislation, the exemption is withdrawn not only from concessions at Metro but also could apply to the other two Wayne County airports—Detroit City and Grosse Ile Municipal Airport. It is diffi-

cult to "reconcile the legislative intent * * * with the legislative scheme".

The trial court in *Avis* furnished another example why county population is not reasonably related to the withdrawing of a tax exemption from airport concessions in counties over 1,000,000 population. Willow Run Airport, once the state's principal commercial airport, straddles county lines. Its terminal facilities are in Washtenaw County. Other portions, such as runways, are in Wayne County. Because Washtenaw County has less than 1,000,000 people, concessions at Willow Run enjoy a tax exemption.

The trial court in *Hertz* noted that the defendants had supplied "figures on emplanement and deplanements which show that the overwhelming majority of Michigan's passenger air traffic takes place at Metropolitan Airport". Defendants said this was because Metro "is in the state's most populous county". The court said that the airport traffic was not related to or dependent on Wayne County's population. The trial court in *Avis* said "there is no correlation between the county in which an airport is located and the traffic which passes through the airport".

We do not see a reasonable relationship between the withdrawing of a tax exemption from airport concessions and the size of the county where the airport is located. We believe the legislation is a local act in an area where a general act could be made applicable.

This litigation concerns MCLA 211.181(2); MSA 7.7(5)(2). By holding it unconstitutional, we do not mean to upset the exemption granted by MCLA 211.181(1); MSA 7.7(5)(1) which can effectively operate without subsection (2). MCLA 8.5; MSA 2.216 says if a portion of legislation is invalidated "such

invalidity shall not affect the remaining portions * * * of the act which can be given effect without the invalid portion * * * provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable". We find the sections involved to be severable. MCLA 211.181(1); MSA 7.7(5)(1) remains effective.

### III

The lower courts have said that 1970 PA 174 violates Const 1963, art 9, § 3. Because we have agreed that Const 1963, art 4, § 29 was violated by the act, this issue need not be further discussed.

Affirmed. No costs, this being a public question.

KAVANAGH, C. J., and LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with COLEMAN, J.

WILLIAMS, J. *(for constitutionality).* In my opinion 1970 PA 174 is constitutional. To begin with, it is elementary and basic that a legislative act will be held constitutional if it is at all possible.

In this instance, the majority would hold 1970 PA 174 unconstitutional. Their reasoning is that the size of the county in which an airport lies has no rational relationship to whether or not there should be exception to the airport exception to the 1953 PA 189 tax.

The initial purpose of 1953 PA 189 was to expand the tax base by making the users and lessees of public land taxable. The exemptions contained therein were to encourage the operations of concessions at public places where services might not be forthcoming without such a tax concession. 1970 PA 174 amended 1953 PA 189

merely by narrowing those concessions exempted in certain cases where the airports are located in counties of 1,000,000 or more population.

One might agree that the particular size of the county in which an airport lies is by itself no reason why the 1953 PA 189 tax should apply, if airports in other counties are tax free. The reasonableness of taxation must bear some relationship to the ability to pay the tax over against the purpose of the airport exception itself. Since there may be small, low-traffic airports as well as large, heavy-traffic airports in a large county, the size of the county by itself may not provide sufficient rationale for the subclassification.

But this size-alone analysis overlooks that the Legislature did not solely limit its description of the subclassification to the size of the county. It prescribed in addition three "basic tests", the first and pertinent one of which reads as follows:

"(a) It [concessionaire] shall have the exclusive right and duty to render a necessary or customary service * * * ."

The obvious purpose of this test is to exclude from taxation concessionaires which have to be induced by "exclusive" contract to render service at the airport and hence make it more viable, on the one hand, while, on the other hand, permitting taxation where the business is so attractive, and tax supportable, that more than one concessionaire seeks to and does "work" the airport.

The rationale of 1970 PA 174 "makes sense". It exempts concessionaires from taxation where such exemption is necessary to induce airport service. It does not exempt concessionaires where exemption is not necessary to induce service. The Legislature

therefore cannot be charged with an unreasonable or irrational classification or tax policy, because they based their classification on ability to pay, a normal tax classification.

"Exclusive right and duty" contractual provisions enjoyed simultaneously by several concessionaires are statutorily irrelevant, because whatever they may mean to the contractors, they cannot change the fact that where more than one person has concession rights he does not "have the exclusive right and duty to render a necessary or customary service" under the statute.

In conclusion, 1970 PA 174 is constitutional, and since the concessionaires in these two cases fall within the taxable subclassification of 1953 PA 189, as amended by 1970 PA 174, they are liable for the appropriate taxes.

The Court of Appeals should be reversed.