GREAT SCOTT SUPERMARKETS, INC v DEPARTMENT OF
TREASURY

Docket Nos. 49354-49357. Submitted January 6, 1981, at Lansing.—
Decided March 2, 1982. Leave to appeal applied for.

Great Scott Supermarkets, Inc., Allied Holding Company, Market
Leasing Company and Riley Land Company filed annual re-
ports and paid franchise fees as computed by them for the
years 1973 and 1974. On January 31, 1977, the Department of
Treasury conducted a field audit and determined that there
were deficiencies in the fees paid. The taxpayers paid the
deficiencies and, on August 10, 1977, filed a petition with the
Tax Tribunal for a refund. The Tax Tribunal declined to order
a refund. The taxpayers appealed and the appeals were consoli-
dated. *Held:*

1. The 1978 act by which the Legislature declared payments
and refunds made prior to 1975 under the former franchise fee
act following a field audit by the Department of Treasury to be
valid does not violate the constitutional right to due process of
law.

2. The 1978 act of the Legislature whereby they made valid
those payments of franchise fee deficiencies resulting from field
audits in the years prior to 1975 unconstitutionally denied
equal protection to those taxpayers who paid such increased
fees, since by that act those taxpayers who paid such added fees
were denied refunds while similarly situated taxpayers who
refused to pay such additional fees escaped liability on the
deficiency assessments.

Reversed.

1. TAXATION — FRANCHISE FEES — DUE PROCESS.

The 1978 act by which the Legislature declared payments and
refunds made prior to 1975 under the former franchise fee act
following a field audit by the Department of Treasury to be
valid does not violate the constitutional right to due process of
law (MCL 450.321; MSA 21.213[1]).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 72 Am Jur 2d, State and Local Taxation § 832.
[2] 72 Am Jur 2d, State and Local Taxation § 1075.

2. TAXATION — FRANCHISE FEES — EQUAL PROTECTION.

    The 1978 act by which the Legislature declared payments and refunds made prior to 1975 under the former franchise fee act following a field audit by the Department of Treasury to be valid is unconstitutional to the extent that it denies equal protection to those taxpayers who paid the deficiency assessments (MCL 450.321; MSA 21.213[1]).

*Honigman, Miller, Schwartz & Cohn* (by *Michael B. Shapiro),* for petitioners.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Charles E. Liken,* Assistants Attorney General, for respondent.

Before: D. E. HOLBROOK, JR., P.J., and M. F. CAVANAGH and MACKENZIE, JJ.

MACKENZIE, J. This case involves claims for refund of a portion of the corporate franchise taxes and interest paid to the state by appellants in 1973 and 1974. It is stipulated that appellants timely filed annual reports with the Michigan Department of Commerce and paid franchise fees as computed by them for each year in question. Appellee accepted the fees as filed. However, on January 31, 1977, appellee conducted a field audit and determined deficiencies in the fees paid. Appellants promptly paid the deficiencies claimed but filed a petition for refund with the Tax Tribunal on August 10, 1977. The Tax Tribunal, relying on 1978 PA 392, declined to order a refund in an opinion and order dated January 3, 1979. Appellants appeal by right.

    The origins of this case may be traced to *Borden, Inc v Dep't of Treasury,* 391 Mich 495; 218 NW2d 667 (1974). In that case an equally divided Court affirmed this Court's decision at 43 Mich App 106;

204 NW2d 34 (1972). The opinion for affirmance indicated that the department had exhausted its authority when it computed Borden's franchise fee following the receipt of Borden's annual report. The department had no authority to recompute the fee if it subsequently obtained what it regarded as more accurate information and no authority to utilize field audits to determine the correct fee. The basis for this result was historical. The franchise fee was originally a license fee for the privilege of doing business in the state, not a revenue-raising measure. The procedure followed was that, promptly after the filing of a corporation's annual report, the franchise fee would be computed by the responsible state official upon receipt of such additional information as he required. See, *e.g., In re Appeal of Hoskins Manufacturing Co,* 270 Mich 592, 596-597; 259 NW2d 334 (1935):

"As a general proposition, we think the State is justified in holding that the tax is determined from the corporate books. The statute does not provide, in express language or by authorization of expense, for the impractical procedure of audit and appraisal of each corporation each year by the State. It contemplates that the tax shall be found from the annual report of the corporation to the Secretary of State, supplemented by the further facts demanded under 1931 PA 327, § 82(o), and the detailed and exact information provided for in 2 Comp Laws 1929, § 10143. Obviously, the source of information and facts is the corporate books, which the statute assumes, and requires, shall be kept correctly. Obviously, also, the books represent the action of the corporation in valuing its assets and it has little cause to complain of such book values."

When, in later years, the franchise fee became a revenue-raising measure, the statutory procedures

for collecting the tax remained unchanged by the Legislature. The opinion for affirmance in *Borden* declined to permit the Department of Treasury to alter the statutory procedures absent legislative action. In *Clark Equipment Co v Dep't of Treasury*, 394 Mich 396; 230 NW2d 548 (1975), the opinion for affirmance in *Borden* was adopted by the majority of the Court.

The legislative response to *Borden* and *Clark* was 1975 PA 13, which, among other things, added MCL 450.309b; MSA 21.210b to authorize the Department of Treasury to audit those corporations which were subject to the franchise fee. In *International Business Machines Corp v Dep't of Treasury*, 75 Mich App 604; 255 NW2d 702 (1977), *lv den* 401 Mich 816 (1977), the Treasury argued that 1975 PA 13 authorized it to audit and redetermine franchise fees for 1971-1973. The Court disagreed and held that the statute would be given prospective effect only.

This Court ordered refunds to the taxpayer based on unauthorized recomputation and field auditing in *St Clair-Macomb Consumers Co-Operative v Dep't of Treasury*, 78 Mich App 287; 259 NW2d 462 (1977), and in *Giffels Associates, Inc v Dep't of Treasury*, 81 Mich App 730; 265 NW2d 809 (1978). Again the Legislature responded. 1978 PA 392 enacted MCL 450.321; MSA 21.213(1), which provides:

"All audits performed by or at the direction of the department of treasury for the purpose of determining liability for a corporate franchise fee levied pursuant to former Act No. 85 of the Public Acts of 1921, and all payments received and refunds made on the basis of those audits before the repeal of former Act No. 85 of the Public Acts of 1921 are declared to be valid and to have been in fulfillment of the legislative purpose to

provide for fair administration and enforcement of that act."

In *Chesapeake & Ohio R Co v Dep't of Treasury,* 87 Mich App 740; 276 NW2d 854 (1979), the Court held that the Corporation Tax Appeal Board had incorrectly reversed the 1972 deficiency assessment against the taxpayer because the record revealed that the department had never accepted the corporation's annual report and franchise fee for that year. The Court noted in passing that the issue of the department's authority to conduct audits had recently been "definitely resolved" by the passage of 1978 PA 392.

Note that the Corporate Franchise Fee Statute, MCL 450.304 *et seq.;* MSA 21.205 *et seq.,* was repealed by 1975 PA 230. Thus, the issues in this appeal are confined to franchise fees for years before repeal.

I

Appellants argue that 1978 PA 392 denied them due process because it attempted to retroactively cure appellee's lack of authority to collect the fees in question. The rule applicable to such an argument was explained in *Graham v Goodcell,* 282 US 409, 426-427; 51 S Ct 186; 75 L Ed 415, 439 (1931):

"There is no question here as to the original liability of the taxpayers. The tax was a valid one, and the fact that the taxpayers had been indebted to the government for the amount which was subsequently collected is not now open to dispute. Delay in collection had followed upon the taxpayers' request for a consideration of their claim that the tax should be abated, and, in the mistaken belief on the part of the administrative authorities that the statute of limitations did not bar collection by the appropriate proceeding of distraint,

the delay had been continued until after the statute had run. On the discovery of the mistake, as pointed out by the decision of this court, the Congress sought to prevent a refund of the amount thus collected. The question is whether these circumstances remove the case from the operation of the general rule that it is not consistent with due process to take away from a private party a right to recover the amount that is due when the act is passed. * * *

"This rule is well illustrated by the case of *Forbes Pioneer Boat Line v Everglades Drainage Dist* [258 US 338; 42 S Ct 325; 66 L Ed 647 (1922)] where the suit was brought to recover tolls unlawfully collected for passage through the lock of a state canal. The passage was free under the law as it stood at the time, and the subsequent legislation of the state which attempted to validate the illegal collection was held to be in violation of the 14th Amendment. The court said that the legislature in 1919 could not compel plaintiff to pay for a passage made in 1917 without promise of reward, 'any more effectively than it could have made a man pay a baker for a gratuitous deposit of rolls.' But while the legislature could not in such a case retroactively create a liability, the court recognized that there is a class of cases in which defects in the administration of the law may be cured by subsequent legislation without encroaching upon constitutional right, although existing causes of action may thus be defeated."

Here, the Legislature did not seek to retroactively create a liability for franchise fees. For the purposes of this action, appellants do not contend that the department was factually incorrect when it determined that appellants had not paid large enough franchise fees. The defect the Legislature sought to cure was a defect in the administration of the law: namely, the improper procedures followed by the department in collecting the fees which appellants owed. Under the rule stated in *Graham v Goodcell, supra,* the Legislature had the power to pass such a retroactive curative statute.

Appellants point out that they commenced this action before 1978 PA 392 was enacted, and argue that they, therefore, had a vested right to a refund which the Legislature could not take away without compensation. Appellants rely on *Daniells v Watertown Twp,* 61 Mich 514, 517; 28 NW 673 (1886). However, the vested right at issue in *Daniells* was very different from appellants' claim for a refund:

"The difficulty in this case is, there has been a sale of property levied upon, and the rights of the parties became vested before the curative legislation took effect, and such rights cannot be interfered with in this manner."

In *United States v Heinszen,* 206 US 370; 27 S Ct 742; 51 L Ed 1098 (1907), the Court held that ratification by Congress of the illegal collection of duties on imports to the Philippines (then under American administration) did not deprive importers of property without due process of law even though they had commenced an action to recover the duties before passage of the ratifying statute. See also the cases given in Anno: *Defects in tax proceedings, affecting liability for tax, that may be remedied by curative statute,* 140 ALR 959, 989-990. Apparently, only the Kentucky courts have adopted the opposite view. See *Norman v Boaz,* 85 Ky 557; 4 SW 316 (1887), and *Turner v Town of Pewee Valley,* 100 Ky 288; 38 SW 143 (1896). A different result would be required only if appellants had obtained a judgment before passage of the statute. See *Moser v White,* 29 Mich 59 (1874).

II

Appellants argue that 1978 PA 392 violates the constitutional requirement of equal protection of

the law because it irrationally created two classes of taxpayers. Members of one class, including appellants, paid deficiencies which the department illegally assessed and subsequently filed suit for a refund. The statute prevents the members of this class from obtaining a refund. Members of the second class refused to pay the deficiencies. In *Borden, supra,* and *Clark, supra,* the Court held that the department had neither the power to audit nor the power to recompute fees once it had accepted them. Since the statute validates audits, payments received, and refunds made but does not validate recomputations, members of the second class will never be required to pay the deficiencies.

States have wide discretion in the area of taxation, but they must proceed on a rational basis and may not resort to palpably arbitrary classification. A classification must be based on some reasonable distinction or difference in state policy. *Allied Stores of Ohio v Bowers,* 358 US 522, 526-528; 79 S Ct 437; 3 L Ed 2d 480 (1959). The evident purpose of 1978 PA 392 was to cure the defects in the department's procedure pointed out in *Borden, supra,* and *Clark, supra.* That purpose is not assisted by the classification created by the statute; on the contrary, it is hindered. Under some circumstances, administrative convenience in the collection or measurement of a tax is sufficient to justify a classification. See *Carmichael v Southern Coal & Coke Co,* 301 US 495; 57 S Ct 868; 81 L Ed 1245 (1937), and *New York Rapid Transit Corp v New York,* 303 US 573; 58 S Ct 721; 82 L Ed 1024 (1938). However, we cannot see how administrative convenience is served by the classification here. There is nothing in the record to suggest, for example, that the cost of collecting deficiencies from the unwilling members of the second class

would offset the revenue to be gained thereby. We note that by paying the assessed deficiency and filing for a refund, appellants were following the procedure specified in MCL 450.310; MSA 21.210(1). The classification contained in 1978 PA 392 therefore serves to discourage compliance with statutory appeal proceedings.

In short, no rational basis for the classification contained in the statute has been suggested to us, and we have been unable to conceive of any. While the Legislature has the power to enact a statute which would retroactively cure the defect in the department's administration of the statute pointed out in *Borden, supra,* and *Clark, supra,* it must do so without creating palpably arbitrary classifications such as that presented here. Until the Legislature passes a statute which cures the defects in a manner consistent with equal protection, the results reached in *Borden* and *Clark* may not be avoided and appellants are entitled to a refund.

Reversed.