ARMCO STEEL CORPORATION v DEPARTMENT OF TREASURY

GREAT SCOTT SUPERMARKETS, INC v DEPARTMENT OF
TREASURY

Docket Nos. 68441, 68983-68986. Argued October 5, 1983 (Calendar
Nos. 9, 10).—Decided December 3, 1984.

Armco Steel Corporation, Great Scott Supermarkets, Inc., and
other corporate taxpayers, were assessed corporate franchise
fee deficiencies for various tax years prior to 1975 following
unauthorized audits and recomputation of the franchise fees by
the Department of Treasury. The corporations paid the defi-
ciencies and filed requests for refunds with the Franchise Fee
Division of the department on the basis of decisions of the
Supreme Court holding that the department had no authority
either to conduct field audits of a corporation's books or to
recompute a franchise fee if it subsequently obtained what it
regarded as more accurate information, and a decision of the
Court of Appeals holding that 1975 PA 13, which authorized
the Franchise Fee Division to conduct audits and assess defi-
ciencies, was prospective in operation. The division thereafter
refused to rescind deficiency assessments which remained un-
paid, but carried out a considered policy to refuse refunds to
corporate taxpayers who had requested them.

Armco and others brought an action in the Ingham Circuit
Court, seeking a declaration that 1978 PA 392 as applied to
them denied equal protection to corporate taxpayers who had
paid deficiencies and timely requested refunds for tax years
prior to 1975. The court, Robert Holmes Bell, J., held 1978 PA
392 unconstitutional. The Court of Appeals, M. J. Kelly, P.J.,
and Bronson and Daniels, JJ., affirmed (Docket No. 51354).
Great Scott and others were denied refunds in the Michigan
Tax Tribunal. The Court of Appeals, D. E. Holbrook, Jr., P.J.,
and M. F. Cavanagh and MacKenzie, JJ., reversed, holding that
1978 PA 392 unconstitutionally denied the plaintiffs equal

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 71 Am Jur 2d, State and Local Taxation §§ 199, 266-276.
[1-6] 72 Am Jur 2d, State and Local Taxation § 791.
[5, 6] 71 Am Jur 2d, State and Local Taxation § 268.

protection of the law (Docket Nos. 49354-49357). The Department of Treasury appeals.

In a unanimous opinion by Justice Ryan, the Supreme Court *held:*

1978 PA 392, in attempting to retroactively validate the practical discrimination by the Department of Treasury in denying refunds of improperly assessed franchise fee deficiencies for tax years prior to 1975 to corporate taxpayers that paid the deficiencies, while excusing payments by taxpayers that withheld payments pending redetermination of assessments or that refused to pay without seeking redetermination, unconstitutionally denied the paying corporations equal protection of the law.

1. In *Clark Equipment Co v Dep't of Treasury,* adopting the reasoning for affirmance in *Borden, Inc v Dep't of Treasury,* the Supreme Court held that once the Department of Treasury computed a corporation's franchise fee upon the basis of the corporation's annual report, it had exhausted its authority under the franchise fee act, and had no authority to conduct field audits of the corporation's books or to recompute the fee even if it later obtained more accurate information about the corporation's liability. As originally enacted, the franchise fee act was merely a licensing measure and was not a revenue-raising tax. When the fee subsequently was transformed into a major revenue source, the statutory procedures for its collection remained unchanged, and the department did not have authority to augment those procedures. In response to these decisions, the Legislature enacted 1975 PA 13 which amended the collection procedures. The Court of Appeals held that the effect of the act was prospective only, and, thus, the rule of *Clark* and *Borden* controlled tax years prior to the passage of 1975 PA 13. 1978 PA 392 was intended to retroactively validate the audits and recomputations by the department.

2. Under the franchise fee act, corporate taxpayers were provided two procedural remedies by which they could challenge the Franchise Fee Division's determination of their franchise fee liability. They could petition the division for a redetermination of liability, and withhold payment of the fee pending the division's decision, or they could pay the fee determined by the division and file a written petition for a refund within three years. Under this legislative scheme, taxpayers choosing either remedy were to be treated equally.

3. Under the Equal Protection Clauses of the United States and Michigan Constitutions and under the Uniformity of Taxation Clause of the Michigan Constitution, the controlling princi-

ple is one of equal treatment of similarly situated taxpayers. Some rational basis for a disputed classification must be shown to exist. It is no answer to say that the plaintiffs have only paid what was legally owed by them; when faced with a choice between securing that which is due under the law and upholding the constitutional requirements of uniformity and equality, the latter is to be preferred as the just and ultimate purpose of the law.

4. Taxpayers who refused to pay their deficiency assessments before obtaining a redetermination, or taxpayers who refused to pay without pursuing even this statutory remedy, have consistently been excused from payment, while taxpayers such as the plaintiffs in these cases who chose to pay and seek refunds have consistently been denied refunds. The only distinction between the groups is that one paid deficiencies while the other did not. Such a distinction bears no reasonable relationship to the object of the classification. 1978 PA 392, as applied to plaintiffs, has the effect of benefiting or preferring those who do not pay their taxes promptly over those who do. While the Legislature can validate retroactively anything that it could have originally authorized, the Legislature is not empowered to validate the Franchise Fee Division's persistent discrimination between two groups of taxpayers who are in reality but one class.

Affirmed.

111 Mich App 426; 315 NW2d 158 (1981) affirmed.

113 Mich App 679; 318 NW2d 537 (1982) affirmed.

1. TAXATION — FRANCHISE FEES — CONSTITUTIONAL LAW — EQUAL PROTECTION.

 1978 PA 392, which purported to validate unauthorized field audits of corporate books by the Department of Treasury and recomputation of the corporate franchise fee liability and to validate payment of the recomputed fees, as applied by the department in denying refunds to taxpayers that paid the recomputed fees and sought refunds while excusing payment of the fees by corporations that withheld or refused payment, unconstitutionally denied the taxpayers equal protection of the law (US Const, Am XIV; Const 1963, art 1, § 2, art 9, § 3; MCL 450.301 et seq.; MSA 21.201 et seq., repealed by 1972 PA 284, 1975 PA 230; MCL 450.321; MSA 21.213[1]).

2. TAXATION — FRANCHISE FEES — CONSTITUTIONAL LAW — EQUAL PROTECTION.

 Refusal by the Department of Treasury, on the authority of 1978 PA 392, to issue refunds of franchise fee deficiency payments

by corporate taxpayers following assessments made on the basis of unauthorized field audits of corporate books, while excusing payments by corporations that withheld or refused payment, was an unconstitutional denial of the equal protection of law (US Const, Am XIV; Const 1963, art 1, § 2, art 9, § 3; MCL 450.321; MSA 21.213[1]).

3. TAXATION — FRANCHISE FEES — CONSTITUTIONAL LAW — EQUAL PROTECTION.

No rational basis existed that would justify disparate treatment by the Department of Treasury of corporate taxpayers who paid franchise fee deficiency assessments following unauthorized audits and recomputations by the department over taxpayers who refused or withheld payment (MCL 450.321; MSA 21.213[1]).

4. TAXATION — FRANCHISE FEES — CONSTITUTIONAL LAW — EQUAL PROTECTION.

Corporate taxpayers who chose to pay franchise fee deficiency assessments following unauthorized audits and recomputation of the fees by the Department of Treasury and to file petitions for refunds were required to be treated in the same manner as corporate taxpayers who withheld payment of the assessments pending a redetermination of liability, and refusal by the department to refund payments while excusing payment by those taxpayers who withheld payment was an unconstitutional denial of the equal protection of law (MCL 450.321; MSA 21.213[1]).

5. TAXATION — UNIFORMITY — EQUAL PROTECTION.

The controlling principle of taxation under the federal and state Equal Protection Clauses and the state Uniformity of Taxation Clause is one of equal treatment of similarly situated taxpayers; some rational basis for a disputed classification must be shown to exist (US Const, Am XIV; Const 1963, art 1, § 2, art 9, § 3).

6. TAXATION — UNIFORMITY — EQUAL PROTECTION.

When the choice is between securing taxes due under the law and upholding the constitutional requirements of uniformity of taxation and equality of treatment, the latter is to be preferred as the just and ultimate purpose of the law (US Const, Am XIV; Const 1963, art 1, § 2, art 9, § 3).

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Peter S. Sheldon* and *Anthony Ilardi, Jr.)* for Armco Steel Corporation.

*Honigman, Miller, Schwartz & Cohn* (by *Michael B. Shapiro)* for Great Scott Supermarkets, Inc.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Charles E. Liken,* Assistant Attorneys General, for the Department of Treasury.

RYAN, J. In these consolidated cases, the Court is asked to interpret and adjudge the constitutionality of 1978 PA 392.[1] Plaintiffs are domestic and foreign corporations seeking refunds of corporate franchise fee deficiencies paid by them for various tax years preceding 1975, under former 1921 PA 85, commonly referred to as the franchise fee act.[2]

Act 392 is a legislative attempt to validate retroactively the Treasury Department's consistent refusal to grant the requested refunds. The Court of Appeals panels in each of these consolidated cases held that Act 392 has denied plaintiffs equal protection of the law.

I

The controversy in these cases emanates from

---

[1] MCL 450.321; MSA 21.213(1):

"All audits performed by or at the direction of the department of treasury for the purpose of determining liability for a corporate franchise fee levied pursuant to former Act No. 85 of the Public Acts of 1921, and all payments received and refunds made on the basis of those audits before the repeal of former Act No. 85 of the Public Acts of 1921 are declared to be valid and to have been in fulfillment of the legislative purpose to provide for fair administration and enforcement of that act."

[2] MCL 450.301 *et seq.;* MSA 21.201 *et seq.*

This act was called the fees, taxes and charges act. It was repealed effective May 14, 1977 by 1975 PA 230, contemporaneously with the enactment of the Single Business Tax Act, 1975 PA 228, MCL 208.1 *et seq.;* MSA 7.558(1) *et seq.* It was provided in 1975 PA 230, however, that the act would extend beyond its repeal date to the extent necessary for enforcement and collection of franchise fees due prior to its repeal.

this Court's decisions in *Borden, Inc v Dep't of Treasury,* 391 Mich 495; 218 NW2d 667 (1974), and *Clark Equipment Co v Dep't of Treasury,* 394 Mich 396; 230 NW2d 548 (1975). In *Borden,* an equally divided Court affirmed the decision of the Court of Appeals, holding that once the Department of Treasury computed a corporation's franchise fee upon the basis of the corporation's annual report, it exhausted its authority under the franchise fee act. The Court specifically held that the department had no authority either to conduct field audits of a corporation's books or to *re*compute a corporation's franchise fee if the department subsequently obtained, from whatever source, information about the corporation's affairs that it regarded as more accurate. The Court rested its holding upon the historical fact that, as originally enacted, the franchise fee was merely a licensing measure rather than a revenue-raising tax. When the fee was subsequently transformed into a major source of revenue, the statutory procedures for collecting it nevertheless remained unchanged.[3] The Court declined to permit the Department of Treasury to augment these existing procedures without legislative authorization. Although *Borden*

[3] As originally enacted, the franchise fee act specified the minimum ($50) and maximum ($10,000) fees that could be imposed. In 1951, however, amendments to the act increased the rate at which the fee would be computed and eliminated the maximum amount of the fee that could be assessed, converting the act into a major revenue-raising measure. Notwithstanding this transformation, the Legislature did not add to or alter the collection powers of the Corporation and Securities Commission, which was then responsible for administration of the act. Notably absent was the statutory authorization to utilize audits in determining the correct fees and a limitations period beyond which deficiencies could not be assessed. Then, by the Executive Organization Act of 1965, 1965 PA 380, § 90, MCL 16.190; MSA 3.29(90), responsibility for the administration of the franchise fee act was transferred from the commission to the Department of Treasury. Thereafter, armed with the Treasury Department's facilities for investigation and collection of taxes, the Franchise Fee Division began auditing corporations subject to its tax and recomputing their fees in 1966.

was decided by an equally divided Court, Justice LEVIN's opinion for affirmance in *Borden* was subsequently expressly adopted by a majority of the Court in *Clark Equipment, supra,* p 399.

The legislative response to the *Borden* and *Clark* decisions was the passage of 1975 PA 13, amending §§ 9 and 10 of the franchise fee act. MCL 450.309-450.310; MSA 21.210-21.210(1). These amendments, in pertinent part, authorized the division to audit corporations subject to the franchise fee and provided a four-year limitations period within which deficiencies could be assessed. However, in *International Business Machines Corp v Dep't of Treasury,* 75 Mich App 604; 255 NW2d 702 (1977), *lv den* 401 Mich 816 (1977), the Court held that 1975 PA 13 would be given prospective effect only, finding no indication in the act of any legislative intent to make the act retroactive. Therefore, for those tax years preceding the passage of 1975 PA 13, the rule of *Borden* and *Clark Equipment* remained controlling. Acquiescing in these decisions only in part, the division cancelled or rescinded those deficiencies which remained unpaid, but refused to grant refunds to those corporate taxpayers who had paid their assessments and later sought repayment. Relying upon *Borden* and *Clark Equipment,* two Court of Appeals panels subsequently affirmed judgments awarding corporate litigants refunds of deficiencies paid by them following unauthorized audits and recomputations. *St Clair-Macomb Consumers Cooperative, Inc v Dep't of Treasury,* 78 Mich App 287; 259 NW2d 462 (1977), *lv den* 402 Mich 869 (1978); *Giffels Associates, Inc v Dep't of Treasury,* 81 Mich App 730; 265 NW2d 809 (1978), *lv den* 403 Mich 808 (1978). Faced with a potential loss to the state treasury of up to $35 million in taxpayer refund

actions,[4] the Treasury Department again sought remedial legislation. The Legislature responded with the passage of 1978 PA 392, the subject of these appeals.

## II

In various tax years preceding 1975, plaintiffs were issued deficiency assessments following unauthorized audits and recomputations. Plaintiffs were among those corporate taxpayers who first paid their deficiencies and subsequently filed refund requests with the Franchise Fee Division. The division denied the requests, prompting plaintiffs to file suit. Plaintiffs in *Armco Steel* first filed suit either in the Michigan Tax Tribunal or the Michigan Court of Claims, or both. Later, however, they filed the instant action in the Ingham Circuit Court[5] seeking a declaratory judgment concerning the interpretation and constitutionality of 1978 PA 392. The circuit court held that 1978 PA 392 constituted a denial of equal protection as to those plaintiffs who timely requested refunds for tax years prior to 1975. The Court of Appeals affirmed. 111 Mich App 426; 315 NW2d 158 (1981). We granted leave to appeal. 417 Mich 886 (1983).

Plaintiffs in *Great Scott* filed an action for refund in the Michigan Tax Tribunal. Although the tribunal declined to order a refund, the Court of Appeals reversed, also holding that 1978 PA 392

---

[4] Although the state treasury faced a loss of up to $35 million at the time Act 392 was passed, the statute of limitations would now bar many refund actions that were originally included within this estimate. Therefore, refund actions pending currently involve less than $2.5 million.

[5] Plaintiffs also sought and were granted a writ of superintending control holding in abeyance the cases previously filed in the Tax Tribunal and Court of Claims. The order granting the writ was the subject of an earlier interlocutory appeal by the division. That dispute has not been pursued in this appeal.

unconstitutionally denied plaintiffs equal protection of the law. 113 Mich App 679; 318 NW2d 537 (1982). Again, we granted leave to appeal. 417 Mich 887 (1983).

III

The circumstances prompting the institution of these suits is not disputed. The division admits that following the decision in *IBM,* holding that 1975 PA 13 would be given prospective effect only, it refused to rescind deficiency assessments which remained unpaid, but carried out a considered policy to refuse refunds to corporate taxpayers who had requested them. Moreover, it appears that even after the enactment of 1978 PA 392, the division continued its disparate treatment of these two groups of taxpayers. In at least one instance of which we have been made aware, plaintiff Upjohn Company filed a written request with the division for a refund in 1974, even before *Clark Equipment* was decided. However, no response was received from the division until 1978, after Act 392 had passed, when Upjohn's request for a refund was denied on the basis of the new act. By contrast, in an order of redetermination issued to another corporate taxpayer, not a party to this litigation, deficiencies which had been assessed for the tax year 1974 and which remained unpaid were rescinded on the basis of the *Borden* and *Clark Equipment* decisions, notwithstanding the fact that this redetermination was made two months after the date of the letter to Upjohn Company, and four months following the effective date of Act 392.

Again, these facts are not disputed by the division. It contends instead that a lawful tax need not be refunded simply because its levy and collection

were irregular; that plaintiffs have paid only what was legally owed by them under the franchise fee act; and that since the Legislature was empowered to validate retroactively anything which it initially had the power to authorize, the passage of Act 392 terminated plaintiffs' rights to refunds. The division argues that plaintiffs were simply "caught" through the division's use of unauthorized audits, and were asked to pay only what was legally required of all corporate taxpayers under the franchise fee act. They should not now be heard to complain.

We think these arguments fail to address adequately plaintiffs' challenge to the constitutionality of Act 392. Plaintiffs have alleged that the act, as applied to them, violates the Equal Protection Clause of the United States Constitution, and the Equal Protection and Uniformity of Taxation Clauses of the Michigan Constitution. US Const, Am XIV; Const 1963, art 1, § 2, and art 9, § 3. This Court has held that the rights provided under the Michigan Constitution are coextensive with those provided under the United States Constitution. *Fox v Employment Security Comm,* 379 Mich 579, 588; 153 NW2d 644 (1967); *Wolodzko v Wayne Circuit Judge,* 382 Mich 528, 534; 170 NW2d 9 (1969). In *Allied Stores of Ohio v Bowers,* 358 US 522, 527; 79 S Ct 437; 3 L Ed 2d 480 (1959), the United States Supreme Court stated:

"[T]here is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule has often been stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' "

These principles are equally applicable to cases involving taxing statutes. In *Beauty Built Construction Corp v City of Warren,* 375 Mich 229; 134 NW2d 214 (1965), the City of Warren imposed a special water tax fee upon all new homes in response to the unexpected growth that was burdening the city's water and sewage system. Existing buildings were exempt from the tax. This classification in the city's ordinance between existing buildings and new homes was held to violate the Equal Protection Clauses of both the United States and Michigan Constitutions:

"This Court has repeatedly held that classification of objects to which a municipal ordinance may be made applicable *must be based on natural distinguishing characteristics and must bear a reasonable relation to the object of the ordinance. * * *

"Where an ordinance fails to include and affect alike all persons of the same class, and extends immunities or privileges to one part and denies them to others of like kind by unreasonable or arbitrary classification, the same is contrary to the equal protection guarantees of the State and Federal Constitutions." *Beauty Built Construction Co, supra,* pp 235-236. (Emphasis in original.)

Similarly, under the Uniformity of Taxation Clause of the Michigan Constitution, the controlling principle is one of equal treatment of similarly situated taxpayers. *Avis Rent-A-Car System, Inc v City of Romulus,* 65 Mich App 119, 128-129; 237 NW2d 209 (1975), *aff'd* 400 Mich 337; 254 NW2d 555 (1977). As a practical matter, in cases involving taxing statutes, there is no discernible difference between the Equal Protection and Uniformity of Taxation Clauses. Some rational basis for a disputed classification must be shown to exist.

The division has failed to suggest any persuasive rational basis justifying its disparate treatment of those corporate taxpayers who paid their deficiency assessments following unauthorized audits and recomputations, and those who did not. Its reasoning that plaintiffs have no basis for complaint because they have paid only what was legally due under the franchise fee act is flawed in two respects. First, it is inappropriate to compare plaintiffs to corporate taxpayers who may have correctly determined their own franchise fee liability in the first instance. It was the Legislature who provided for a self-assessment scheme under the franchise fee act. The relevant class to be considered in analyzing plaintiffs' equal protection challenge is that group of corporate taxpayers who were unlawfully assessed deficiencies following unauthorized audits and recomputations. Second, the deficiency assessments which plaintiffs paid were no more legally due under the law than those deficiency assessments which were rescinded by the division pursuant to *Borden* and *Clark, supra.* Therefore, even if it is true that plaintiffs have paid only that which was legally due, it is a *non sequitur* to then conclude that plaintiffs have not been denied equal protection of the law. In *Sioux City Bridge Co v Dakota County, Nebraska,* 260 US 441; 43 S Ct 190; 67 L Ed 340 (1923), the United States Supreme Court addressed a situation wherein plaintiff claimed that, while its property had been assessed at 100% of its true value in conformity with the relevant state tax statute, other real property in the county had been assessed at only 55% of its value. The Nebraska Supreme Court had held that plaintiff's only remedy was to have the property of others which was assessed below its true value raised, rather than to have its own property, assessed at its true value,

reduced. The United States Supreme Court reversed:

"The dilemma presented by a case where one or a few of a class of taxpayers are assessed at 100 per cent of the value of their property, in accord with a constitutional or statutory requirement, and the rest of the class are intentionally assessed at a much lower percentage, in violation of the law, has been often dealt with by the courts, and there has been a conflict of view as to what should be done. There is no doubt, however, of the view taken of such cases by the Federal courts in the enforcement of the uniformity clauses of state statutes and constitutions, and of the equal protection clause of the 14th Amendment. * * * The conclusion in these and other Federal authorities is that such a result as that reached by the supreme court of Nebraska is to deny the injured taxpayer any remedy at all, because it is utterly impossible for him, by any judicial proceeding, to secure an increase in the assessment of the great mass of under assessed property in the taxing district. *This court holds that the right of the taxpayer whose property alone is taxed at 100 per cent of its true value is to have his assessment reduced to the percentage of that value at which others are taxed, even though this is a departure from the requirement of statute. The conclusion is based on the principle that where it is impossible to secure both the standards of true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law.* In substance and effect, the decision of the Nebraska supreme court in this case upholds the violation of the 14th Amendment to the injury of the Bridge Company. We must, therefore, reverse its judgment." *Sioux City,* 260 US 446-447. (Emphasis added.)

Although *Sioux City* is factually dissimilar to the instant cases, the broader proposition for which it stands is clearly apposite. When faced, as in this case, with a choice between securing that which is due under the law and upholding the

constitutional requirements of uniformity and equality, the latter is to be preferred "as the just and ultimate purpose of the law".

Under the franchise fee act, corporate taxpayers were provided with two procedural remedies by which they could challenge the division's determination of their franchise fee liability. Under § 9 of the act, MCL 450.309; MSA 21.210, a corporate taxpayer could petition the division for a redetermination of its liability, and withhold payment of the fee pending the division's decision. Under § 10, MCL 450.310; MSA 21.210(1), corporations were permitted to follow the procedures used by plaintiffs in these cases. Following payment of their fees as determined by the division, corporations were given three years within which to file a written petition for a refund. Under this legislative scheme, it is apparent that corporate taxpayers choosing either procedural remedy were to be treated equally. Nevertheless, taxpayers who refused to pay their deficiency assessments before obtaining a redetermination as provided in § 9, or still worse, taxpayers who refused to pay without pursuing even this statutory remedy, have consistently been excused from payment by the division, while those corporate taxpayers who chose the alternative remedy provided by the Legislature in § 10 have been just as consistently denied the refunds they have requested in their petitions to the division. Each of these taxpayers, however, was subject to the division's power, *or lack thereof,* under the franchise fee act. The only distinction existing between them is that one group paid their deficiencies while the other group did not. This is *not* a natural distinguishing characteristic which bears a reasonable relationship to the object of the classification. *Beauty Built Construction Corp, supra,* p 235. The distinction has become important

only because of the division's disparate treatment of these two groups. Although not determinative of our decision in this matter, case law in other jurisdictions has held it unconstitutional to benefit or prefer those who do not pay their taxes promptly over those who do.[6] That, of course, is the precise effect of the fashion in which Act 392 has been applied to the plaintiffs in these cases.

While it is undisputed, therefore, that the Legislature can validate retroactively anything that it could have originally authorized, it is not empowered to validate the division's persistent discrimination between two groups of taxpayers who are in reality but one class.

The judgment of the Court of Appeals in each of these consolidated cases is affirmed.

WILLIAMS, C.J., and KAVANAGH, LEVIN, BRICKLEY, and BOYLE, JJ., concurred with RYAN, J.

CAVANAGH, J., concurred in *Armco* only, and took no part in the decision of *Great Scott.*

---

[6] *Snow's Mobile Homes, Inc v Morgan*, 80 Wash 2d 283, 287; 494 P2d 216 (1972); *Perk v City of Euclid*, 17 Ohio St 2d 4, 7; 244 NE2d 475 (1969); *State ex rel Tharel v Bd of County Comm'rs of Creek County*, 188 Okla 184, 192; 107 P2d 542 (1940); *Richey v Wells*, 123 Fla 284, 290; 166 So 817 (1936); *Simpson v Warren*, 106 Fla 688, 691; 143 So 602 (1932), *reh den* 106 Fla 691; 144 So 324 (1932); *State ex rel Matteson v Luecke*, 194 Minn 246, 251; 260 NW 206 (1935).